UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas Patrick CAVANAGH,
Defendant-Appellant.

No. 85–5133.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 1986.

Decided Jan. 5, 1987.

Mary C. Lawton, Los Angeles, Cal., for plaintiff-appellee.

Manuel U. Araujo, Los Angeles, Cal., for defendant-appellant.

Before KENNEDY, SCHROEDER, and FERGUSON, Circuit Judges.

KENNEDY, Circuit Judge:

This case requires us to determine whether government surveillance complied with the Foreign Intelligence Surveillance Act of 1978 (FISA), 50 U.S.C. §§ 1801–1811 (1982), and whether the procedures established by the Act are consistent with the United States Constitution.

Pursuant to a wiretap authorized under FISA, government officers intercepted a telephone conversation in which appellant Thomas Patrick Cavanagh offered to sell defense secrets to representatives of the Soviet Union. FBI agents posing as Soviet agents arranged to meet with Cavanagh, and he delivered certain classified documents to them. Cavanagh was indicted for attempting to deliver defense information to a foreign government in violation of 18 U.S.C. § 794(a) (1982). He moved to suppress the fruits of the electronic surveillance; the district court denied the motion; and appellant entered a conditional guilty plea under Rule 11(a)(2) of the Federal Rules of Criminal Procedure. On appeal the question is whether the district court erred in denying the suppression motion. We affirm.

FISA provides statutory authorization for electronic surveillance of foreign powers and their agents in certain circumstances. With important exceptions not pertinent here, FISA requires judicial approval before the government engages in an electronic surveillance for foreign intelligence purposes. Under the statute, a federal officer with the approval of the Attorney

General may apply to a special FISA court for an order authorizing surveillance. 50 U.S.C. § 1804. The application must state facts justifying the applicant's belief that "the target of the electronic surveillance is a foreign power or an agent of a foreign power," *id.* § 1804(a)(4)(A), and must certify "that the purpose of the surveillance is to obtain foreign intelligence information," *id.* § 1804(a)(7)(B). A court may approve the proposed surveillance only if it finds probable cause to believe that "the target of the electronic surveillance is a foreign power or an agent of a foreign power." *Id.* § 1805(a)(3)(A). Where, as in the case before us, the surveillance is directed at a facility "owned, leased, or exclusively used by [a] foreign power," the court may comply with the statute by giving a general description of the "information sought [and] the communications or activities to be subjected to the surveillance. . . ." *Id.* § 1805(c); *see also id.* § 1804(b).

■ As a threshold matter, there is no dispute over appellant's standing to challenge the lawfulness of the surveillance. FISA permits aggrieved persons to seek suppression of evidence on the ground that it was unlawfully acquired or that the surveillance was not conducted in conformity with the order of authorization. *Id.* § 1806(e). Appellant was a party to an intercepted communication, and the government concedes he is an "aggrieved person" within the meaning of the statute. *See United States v. Belfield,* 692 F.2d 141, 143, 146 n. 21 (D.C.Cir.1982) (party "incidentally overheard during the course of surveillance of another target" is an aggrieved party). The appellant has standing to challenge the government's compliance with the statute.

■ We conclude also that the surveillance satisfied the statutory requirements for issuance of a warrant by the district court. The Attorney General submitted to the district court an affidavit under 50 U.S.C. § 1806(f) asserting that disclosure of the materials relating to the surveillance would harm the national security of the United States. We have reviewed the sealed materials, which include the government's application for the wiretap and the order authorizing it. The application and the order complied with the statute. *Id.* §§ 1804 (application), 1805 (order). We agree with the district court's findings that the application established probable cause to believe that the target of the surveillance was a foreign power, and included proposed minimization procedures consistent with the statute. The district court correctly concluded that the surveillance was properly authorized and conducted. *Id.* § 1806(e)–(g).

Appellant's main contention in support of his suppression motion is that FISA is deficient under the Fourth Amendment. He argues that the statute does not provide for sufficient judicial scrutiny of the government's surveillance activities. He contends further that FISA's requirement of probable cause that the surveillance target be a foreign power and that the court order approving the surveillance "generally" describe the information sought and the communications to be intercepted are not sufficient under the Fourth Amendment.

The case is presented to us as one in which FISA, and its conformity to the Fourth Amendment, control the outcome; and as such we need determine only whether the statutory requirements are sufficient to satisfy the "general Fourth Amendment standard of reasonableness." *See v. City of Seattle,* 387 U.S. 541, 546, 87 S.Ct. 1737, 1741, 18 L.Ed.2d 943 (1967).

By enacting a statutory framework under which the government may seek and obtain approval of foreign intelligence surveillance, Congress granted explicit authorization of such activity, which it viewed as vital to national security. S.Rep. No. 604 (Part I), 95th Cong., 2d Sess. 7–9, *reprinted in* 1978 U.S.Code Cong. & Ad.News 3904, 3908–10. Congress sought to accommodate and advance both the government's interest in pursuing legitimate intelligence activity and the individual's interest in freedom from improper government intrusion. *Id.* As we will discuss, appellant fails to persuade us that Congress did not give

sufficient weight to the latter. FISA satisfies the constraints the Fourth Amendment places on foreign intelligence surveillance conducted by the government. *See United States v. Duggan,* 743 F.2d 59, 72–74 (2d Cir.1984) (holding that FISA does not violate Fourth Amendment); *In re Kevork,* 634 F.Supp. 1002, 1010–14 (C.D.Cal.1985) (same), *aff'd,* 788 F.2d 566 (9th Cir.1986); *United States v. Megahey,* 553 F.Supp. 1180, 1185–92 (E.D.N.Y.1982) (same); *United States v. Falvey,* 540 F.Supp. 1306, 1311–14 (E.D.N.Y.1982) (same).

█ Appellant argues that the prior judicial scrutiny afforded by FISA is insufficient to satisfy the warrant requirement of the Fourth Amendment because the FISA court is not a detached and neutral body, but functions instead as a compliant arm of the government. Appellant cites a statistical study showing that the FISA court rarely if ever denies the government's applications. *See* Schwartz, *Oversight of Minimization Compliance Under the Foreign Intelligence Surveillance Act: How the Watchdogs Are Doing Their Jobs,* 12 Rutgers L.J. 405, 445 n. 235A, 446 n. 239 (1981). The court's infrequent denial of applications is equally consistent with a practice of careful compliance with the statutory requirements on the part of the government. *See* H.R.Rep. 974, 97th Cong., 2d Sess. 3 (1982) (report of the House Permanent Select Committee on Intelligence acting in its oversight capacity under FISA, 50 U.S.C. § 1808, noting the government's careful compliance with the Act); *see also* S.Rep. 660, 98th Cong., 2d Sess. 23 (1984) (report of the Senate Select Committee on Intelligence, also acting in its oversight capacity under FISA, noting same). The argument by appellant on this aspect of the case is not persuasive for the overriding consideration is that issuance of the warrant is by a detached judicial officer. We conclude that appellant has failed to show that the FISA court provides anything other than neutral and responsible oversight of the government's activities in foreign intelligence surveillance.

In arguing that FISA does not satisfy the Fourth Amendment's requirements of probable cause and particularity, appellant ignores the Supreme Court's admonition that the showing necessary under the Fourth Amendment to justify a surveillance conducted for national security purposes is not necessarily analogous to the standard of probable cause applicable to criminal investigations. *United States v. United States District Court,* 407 U.S. 297, 322, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). The Court explained that "a [d]ifferent standard[ ] [of probable cause] may be compatible with the Fourth Amendment if [it is] reasonable both in relation to the legitimate need of Government for intelligence information and the protected rights of our citizens. For the warrant application may vary according to the governmental interest to be enforced and the nature of citizen rights deserving protection." *Id.* at 322–23, 92 S.Ct. at 2139. The Court reiterated that the probable cause requirement is to be construed against the Fourth Amendment's reasonableness standard: "In cases in which the Fourth Amendment requires that a warrant to search be obtained, 'probable cause' is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness." *Id.* at 323, 92 S.Ct. at 2139. (quoting *Camara v. Municipal Court,* 387 U.S. 523, 534, 87 S.Ct. 1727, 1733, 18 L.Ed.2d 390 (1967)). The question is whether the showing of probable cause required by FISA passes muster under the reasonableness standard.

█ We find that the probable cause showing required by FISA is reasonable. The application must state that the target of the electronic surveillance is a foreign power or an agent of a foreign power, and must certify that the purpose of the surveillance is to obtain foreign intelligence information and that the information cannot reasonably be obtained by normal investigative techniques. 50 U.S.C. § 1804(a). It is true, as appellant points out in his brief, that the application need not state that the surveillance is likely to uncover evidence of a crime; but as the

purpose of the surveillance is not to ferret out criminal activity but rather to gather intelligence, such a requirement would be illogical. *See United States District Court,* 407 U.S. at 322, 92 S.Ct. at 2139 (recognizing distinction between surveillance for national security purposes and surveillance of "ordinary crime"); *Belfield,* 692 F.2d at 144 n. 8 ("[m]uch valuable intelligence information ... has nothing to do with the contemplated commission of a crime"). And as appellant all but conceded at oral argument before us, there is no merit to the contention that he is entitled to suppression simply because evidence of his criminal conduct was discovered incidentally as the result of an intelligence surveillance not supported by probable cause of criminal activity. *See Duggan,* 743 F.2d at 73 n. 5.

We note also that surveillance in this case was aimed at a "facilit[y] ... owned, leased, or exclusively used by [a] foreign power." 50 U.S.C. § 1805(c). The target of the surveillance was thus a "Foreign Power" within the meaning of 50 U.S.C. § 1801(a) and not the more broadly defined "Agent of a Foreign Power" as set out in 50 U.S.C. § 1801(b). We express no opinion on whether the Act's probable cause requirement complies with the Fourth Amendment when surveillance is aimed at an agent of a foreign power.

Appellant suggested at oral argument that FISA does not allow for sufficient judicial scrutiny of the government's need for the intelligence information. We believe that the probable cause requirements of the statute provide ample scrutiny on this issue. The certifications required by the statute are sufficient to ensure that the approved surveillance will fit within the category of foreign intelligence surveillance.

■ We reject appellant's suggestion that FISA violates the Fourth Amendment's particularity requirement by allowing a general description of the information sought. Foreign intelligence gathering is often intended simply to "enhance[ ] ... the Government's preparedness for some possible future crisis...." *United States District Court,* 407 U.S. at 322, 92 S.Ct. at 2139. Where, as here, surveillance is directed at a "facilit[y] ... owned, leased, or exclusively used by [a] foreign power," 50 U.S.C. § 1805(c), the government may be unable to provide "a detailed description of the nature of the information sought...." *Id.* § 1804(a)(6) (criteria in section 1804(a)(6) exempted by sections 1804(b) and 1805(c) in the case of foreign power targets). The requirement that in the case of a foreign power target, the court order "shall generally describe the information sought," *id.* § 1805(c), is sufficiently precise in this context.

Appellant next argues that the composition of the FISA court is in violation of article III of the Constitution. The special FISA court is composed of seven United States District Judges designated by the Chief Justice of the United States. *Id.* § 1803(a). Each FISA judge serves one term of up to seven years and may not serve a second term. *Id.* § 1803(d). Though appellant's argument is not entirely clear, he appears to suggest that the FISA court is not properly constituted under article III because the statute does not provide for life tenure on the FISA court. This argument has been raised in a number of cases and has been rejected by the courts. *Kevork,* 634 F.Supp. at 1014; *Megahey,* 553 F.Supp. at 1197; *see Falvey,* 540 F.Supp. at 1313 n. 16. We reject it as well.

■ We need not address appellant's suggestion that FISA applications must be passed upon by article III judges, as the judges assigned to serve on the FISA court are federal district judges, and as such they are insulated from political pressures by virtue of the protections they enjoy under article III, namely life tenure and a salary that cannot be diminished. U.S. Const. art. III, § 1. As this case illustrates, moreover, article III courts are not foreclosed from reviewing the decisions of the FISA court.

Appellant invokes the principles of judicial independence and separation of powers

that underlie article III, *see Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 57–60, 102 S.Ct. 2858, 2864–65, 73 L.Ed.2d 598 (1981), but those principles are not implicated by appellant's speculation that a judge designated to the FISA court might be influenced by the possibility that his temporary assignment might be revoked. By statute, federal judges may be designated by the Chief Justice to serve temporarily on other courts, 28 U.S.C. §§ 291–296 (1982), and temporary designation within the federal judicial system has never been thought to undermine the judicial independence that article III was intended to secure. *See generally Glidden Co. v. Zdanok*, 370 U.S. 530, 530–41, 82 S.Ct. 1459, 1463–68, 8 L.Ed.2d 671 (1962) (referring to the designation provisions). As was noted by the courts in *Kevork*, 634 F.Supp. at 1014, and *Megahey*, 553 F.Supp. at 1197, there is substantial precedent for the temporary assignment of lower federal judges by the Chief Justice to serve on various specialized courts. *See, e.g.*, 28 U.S.C. § 292(e) (stating that the Chief Justice may assign district judges temporarily to the Court of International Trade); Economic Stabilization Act Amendments of 1971, Pub.L. No. 92–210, § 211(b)(1), 85 Stat. 743, 749 (1971) (stating that "the Temporary Emergency Court of Appeals ... shall consist of three or more [circuit or district] judges to be designated by the Chief Justice.... The Chief Justice ... may, from time to time, designate additional judges ... and revoke previous designations"); 28 U.S.C. § 1407(d) (stating that "[t]he judicial panel on multidistrict litigation shall consist of seven circuit and district judges designated from time to time by the Chief Justice"). The FISA court does not violate article III.

Finally, we reject appellant's assertion that the FISA court violates article II of the Constitution because judges are assigned to the court by the Chief Justice rather than by the President of the United States. The contention is foreclosed by a decision of the Supreme Court, holding that temporary assignment of a federal district judge to another district did not violate the President's appointment power under the Constitution. *Lamar v. United States*, 241 U.S. 103, 118, 36 S.Ct. 535, 540, 60 L.Ed. 912 (1916).

The government complied with FISA and the statute survives appellant's constitutional challenges. Appellant's conviction is AFFIRMED.