**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**George MacArthur POSEY, III, Defendant–Appellant.**

**No. 87–5297.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 15, 1988.

Decided Jan. 9, 1989.

---

Steven C. Morrison, Morrison & Shirley, Irvine, Cal., for defendant-appellant.

Brian J. Hennigan, Asst. U.S. Atty., Crim. Div., Los Angeles, Cal., for plaintiff-appellee.

Before TANG, NORRIS and HALL, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Appellant George Arthur Posey appeals his convictions for violating and conspiring to violate the Comprehensive Anti-Apartheid Act and the Arms Export Control Act. We affirm.

## I

## BACKGROUND

Appellant is in the business of selling technical data relating to military and commercial aircraft to contractors located both in the United States and abroad. The information he sells is unclassified, and he generally obtains it from the government through requests under the Freedom of Information Act.

In 1985, the FBI became aware that appellant was arranging sales of technical data to purchasers in South Africa. The government obtained a wiretap order from the Foreign Intelligence Surveillance Court upon a finding that appellant was an "agent of a foreign power" pursuant to 50 U.S.C. § 1801(b)(2)(A). The wiretap con-

firmed that appellant was arranging to ship military technology manuals to South Africa. In early 1987, appellant was arrested after an associate was caught with the manuals at the airport, boarding a flight to Argentina en route to South Africa.

Appellant was charged with one count of Conspiracy to Violate the Arms Export Control Act (AECA), 18 U.S.C. § 371 (1982) and 22 U.S.C. § 2778 (Supp. IV 1986), and the Comprehensive Anti–Apartheid Act, 22 U.S.C. § 5067 (Supp. IV 1986); one count of violating the AECA by shipping to South Africa technical manuals relating to generators of the C–130 aircraft; and one count of violating the AECA by shipping to Argentina a design handbook relating to the C–130. Shortly before trial, an additional count was brought charging appellant with violating the CAAA by sending the technical manuals to South Africa.

During the trial, the first AECA count charging him with violating the AECA by shipping the technical manuals to South Africa was dismissed. Appellant was convicted of the conspiracy count and the remaining two substantive counts and was sentenced to ten years in prison, with all but the first four months of the sentence suspended. He now appeals on a variety of grounds.

## II

### SURVEILLANCE PURSUANT TO THE FOREIGN INTELLIGENCE SURVEILLANCE ACT

■ Appellant argues that the government's electronic surveillance of him, carried out pursuant to the Foreign Intelligence Surveillance Act (FISA), 50 U.S.C. §§ 1801–1811 (1982), violated the Fourth Amendment. We disagree.

The FISA authorizes electronic surveillance of foreign powers and their agents for foreign intelligence purposes, specifying a number of standards and procedures for the issuance of surveillance warrants. With certain exceptions not relevant here, FISA requires judicial approval before the government may engage in such surveillance. Under the statute, a federal officer with the approval of the Attorney General may apply to a special FISA court for an order authorizing surveillance. 50 U.S.C. § 1804. The application must state facts justifying the applicant's belief that the target of the surveillance is "an agent of a foreign power," 50 U.S.C. § 1804(a)(4)(A), which is defined as a person who "knowingly engages in clandestine intelligence gathering activities for or on behalf of a foreign power, which activities involve or may involve a violation of the criminal statutes of the United States." 50 U.S.C. § 1801(b)(2)(A).

Appellant contends that these provisions of the FISA violate the Fourth Amendment's requirement that the government conduct searches only upon the issuance of a warrant supported by probable cause.[1] Appellant argues that the standards enunciated in the FISA are so broad and vague that they fail to provide a "discernible probable cause standard" for the issuance of warrants. He urges that the phrases "clandestine intelligence gathering activities" and "activities involve or may involve a violation of the criminal statutes" are so vague and overbroad as to authorize searches falling far below the Fourth Amendment's probable cause requirement.[2]

---

**1.** Although courts considering the constitutionality of the FISA have uniformly upheld its standards and procedures, none has directly considered the constitutionality of the "foreign agents" procedures which Posey challenges here. *See, e.g., United States v. Cavanagh*, 807 F.2d 787, 790–92 (9th Cir.1987); *United States v. Ott*, 637 F.Supp. 62 (E.D.Cal.1986), *aff'd*, 827 F.2d 473 (9th Cir.1986); *United States v. Belfield*, 692 F.2d 141 (D.C.Cir.1982); *U.S. v. Duggan*, 743 F.2d 59 at 72–74. *Cavanagh* does not squarely resolve this question for this case. *Cavanagh* upheld a search conducted against a "foreign power"; for such a search there was no

requirement, as there is for "foreign agents," that there be reason to believe that the target has committed "clandestine intelligence gathering activities" which "involve or may involve" criminal activity. Indeed, the *Cavanagh* court expressly declined to decide whether these standards for "foreign agents" would satisfy Fourth Amendment requirements. 807 F.2d at 791.

**2.** He suggests, for example, that the language might be taken to authorize surveillance against a foreign journalist who enters a government building to collect information for a story. Such an activity, appellant suggests, could be

Moreover, he argues, the FISA's departure from the probable cause standard is not justified by the so-called "national security exception to the Fourth Amendment" which has previously authorized such departures.[3]

■ As an initial matter, we think it clear that appellant may not make a facial challenge to the FISA without arguing that the particular surveillance *against him* violated the Fourth Amendment. Much of appellant's argument is a combined "vagueness" and "overbreadth" argument analogous to those found in the First Amendment context, in which he urges that *some possible applications* of the FISA might violate the Fourth Amendment. Even if he is correct that the FISA's language might be applied in ways that violate the Fourth Amendment, he must show that the particular search in his case violated the Fourth Amendment. Appellant cannot invalidate his own conviction on the argument that others' rights are threatened by FISA.

Appellant has not persuaded us that his Fourth Amendment rights were violated by the surveillance in this case. Our independent review of the materials submitted by the government in support of its warrant application persuades us that the government in fact had satisfied the standard of probable cause. The record shows that the government demonstrated an adequate foundation to establish probable cause to believe that appellant was violating the export control laws. It is thus unnecessary for us to decide whether the standards set forth in the FISA satisfy the requirements of the Fourth Amendment. Whether or not the FISA's standards do, as appellant urges, fall short of the Fourth Amendment because they do not force the government to make the constitutionally requisite showing of probable cause, the government did in fact make such a showing in this case.

## III

### EXCLUSION OF EVIDENCE

■ Appellant contends that the district court erred in excluding certain favorable evidence from the trial. He argues that the district court erred first in excluding his "China brochure" exhibit, which involves an exchange of letters between appellant and a Defense Department official in which the official granted appellant permission to export certain documents, and second in excluding the testimony of two former Defense Department officials who testified that appellant did not need a license to export the materials he was charged with exporting. Appellant contends that the evidence was important to establish his lack of specific intent to commit the crimes he was charged with. However, both pieces of evidence were confusing and not directly pertinent to establishing appellant's state of mind. Moreover, appellant acknowledges that he had the opportunity to present many other exhibits in support of his specific intent defense. Brief of appellant at 44. Considering the record as a whole, we conclude the district court did not abuse its discretion in excluding the evidence. *See United States v. Jenkins,* 785 F.2d 1387, 1396 (9th Cir.1986).

## IV

### JURY INSTRUCTIONS

A. *"Public Domain" Instruction*

Appellant contends that the trial court erred in failing to instruct the jury that it could not convict him if the technical and design handbooks he exported were in the "public domain." The trial court did issue such an instruction with respect to Count

read under the statute as "intelligence gathering" that "may involve" the crime of trespass. Appellant's Brief at 36.

3. That "exception" was defined by the Supreme Court in *United States v. United States District Court,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) (hereinafter *Keith* ) as involving

cases in which surveillance was necessary to prevent "subversion and overthrow." 407 U.S. at 310, 92 S.Ct. at 2133. In all other cases, appellant suggests, the Fourth Amendment standards of probable cause and particularity applicable to criminal investigations also apply to intelligence surveillance.

IV (the remaining AECA charge); however, the court refused to do so for Counts I (conspiracy) and III (CAAA). Appellant is wrong in asserting that Counts I and III had as an element the requirement that the exported materials be outside the "public domain."

■ As to Count I (conspiracy), the government was not required to prove that the exported materials be outside the public domain. To establish a conspiracy, the government needed to prove: (1) an agreement to accomplish an illegal objective; (2) acts in furtherance of the objective; and (3) the requisite intent. *See United States v. Andreen*, 628 F.2d 1236, 1248 (9th Cir. 1980). The overt act need not be unlawful. *United States v. Monroe*, 552 F.2d 860 (9th Cir.1977), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1069 (1978). Although the substantive offense of violating the AECA requires that a defendant actually export Munitions List items not in the public domain, *see* 22 C.F.R. § 125.1, it is not necessary to a *conspiracy* charge that he actually export such items. Even if the items that appellant took out of the country were lawfully exportable under the AECA, the jury could still have found all the elements of a conspiracy to violate the AECA.[4] *Cf. United States v. Sanford*, 547 F.2d 1085, 1091 (9th Cir.1976). Thus, the appellant's requested instruction was erroneous as to Count I.

■ As to Count III (the CAAA), there was also no error in failing to give the "public domain" instruction. The CAAA criminalizes the export of Munitions List items altogether, whether or not in the public domain, with only two exceptions:

items not on the U.N. Resolution and items found by the President to be commercial in nature. *See* 22 U.S.C. § 5067(a), (b). The statute thus encompasses the entire Munitions List, without regard to domestic availability.

Appellant relies on the regulations implementing the AECA to demonstrate that materials in the public domain are not subject to the CAAA. In the subchapter of the federal regulations implementing the AECA and CAAA, one of the regulations implementing the AECA states:

> Information which is in the "public domain" is not subject to the controls in this subchapter.

22 C.F.R. § 125.1. Appellant argues that this language exempts "public domain" information from both the CAAA as well as the AECA. Quite apart from the question of whether federal regulations can effectively create such an exception to the CAAA, it is quite clear that they *do not* create such an exception. The quoted passage from 22 C.F.R. § 125.1 was enacted in 1984 under the AECA. A later passage in the subchapter, enacted in 1986 pursuant to the CAAA, states the following:

> The exemptions provided in the regulations in this subchapter, except § 123.17 and § 125.4(b)(13) of this subchapter, do not apply with respect to exports to [countries including South Africa].

22 C.F.R. § 126.1(a). Thus, the federal regulations make quite clear that the "public domain" exception created in the earlier 22 C.F.R. § 125.1 does not apply to shipments to South Africa.[5]

### B. *FOIA Instruction*

■ Second, appellant argues that the district court should have instructed the

---

**4.** We note that Posey does not challenge the sufficiency of the evidence supporting his conspiracy conviction in Count III. Our cases have held that where the substantive goal of a conspiracy is actually legal, the law requires significant objective acts to corroborate unequivocally a defendant's criminal intent. *United States v. Everett*, 692 F.2d 596, 599 (9th Cir.1982), *cert. denied*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983); *United States v. Sanford*, 547 F.2d 1085 (9th Cir.1976). Under such circumstances, the defendant can only be guilty of conspiracy if he mistakenly believes that he has embarked on an illegal plan or agreement. The requirement

of unequivocal corroboration "safeguards both the government's interest in deterring criminal conduct and the citizen's right not to be injured by 'possible erroneous official conclusions about his guilty mind.'" *United States v. Brooklier*, 459 F.Supp. 476, 482 (C.D.Cal.1978). But this type of challenge goes to the sufficiency of the evidence, which Posey does not dispute.

**5.** Moreover, the regulations implementing the statute recognize the CAAA's explicit limitation of exceptions to those contained in the statutory language itself. *See* 22 CFR § 126.1(c).

jury that it could not convict him if the exported items were available under the Freedom of Information Act. Appellant argues that if the exported items were available under the Freedom of Information Act, Congress could not have intended to criminalize their export. Appellant, noting that Congress once refused to exempt from FOIA's disclosure requirements information whose export is illegal, concludes that Congress must have intended FOIA to permit unrestricted export of information made available under FOIA. *See id.*

The dubious premise of this argument seems to be that Congress could not have rationally wanted to encourage domestic disclosure yet discourage foreign export of certain categories of munitions information. In fact, such a distinction seems quite plausible, and in any case, the language of the CAAA (which was enacted after FOIA) makes no exception for FOIA-released materials. A similar analysis applies to appellant's contention that the exported items should be exempt from the CAAA and AECA because they are unclassified.

### C. *"Official Misstatement of Law" Instruction*

■ Next, appellant argues that the court erred in not instructing the jury that he could not be convicted if he had relied on an official misstatement of the law. However, such an instruction in effect restates the "specific intent" requirement of the statutes—i.e., the requirement that appellant knew he was violating the law—which the district court enunciated quite clearly to the jury. The trial court's instructions quite clearly explain that appellant was not guilty if he believed his actions were lawful; an "official misstatement of the law" instruction would simply have been cumulative of these instructions. The district court's denial was not an abuse of discretion. *See United States v. Echeverry,* 759 F.2d 1451, 1455 (9th Cir.1985).

### D. *First Amendment Instruction*

■ Finally, appellant claims that the court erred in failing to instruct the jury that if the exported items were available to the public, then the First Amendment barred conviction on all counts. Since we conclude that the First Amendment does not in fact bar appellant's conviction in this case, *see infra,* the district court did not err in denying the requested instruction.

### V

### SUFFICIENCY OF EVIDENCE

■ In Count IV, appellant was charged with the unlicensed export of a C–130 Design Handbook, contained in the Munitions List, in violation of the AECA. Appellant argues that there was insufficient evidence to prove that the Design Handbook was in fact covered by the Munitions List. Specifically, appellant argues that the jury should have concluded that the Handbook did not qualify as "technical data" within the meaning of the Munitions List.

The Munitions List, codified at 22 C.F.R. § 121.1, enumerates certain types of "technical data" as covered by the AECA; the definition of "technical data," in turn, is in pertinent part:

> Information which is directly related to the design, engineering, development ... of defense articles.... This does not include information concerning general scientific, mathematical or engineering principles.

22 C.F.R. § 120.21(c). Appellant contends that the jury should have concluded that the Design Handbook contained "general scientific, mathematical or engineering" information. However, the government had two expert witnesses testify that the Handbook constituted technical information within the meaning of the Munitions List. We think that the jury had sufficient evidence to find that the information constituted technical information as required by the statute.

### VI

### DOUBLE JEOPARDY

■ Appellant next argues that Counts I and III were barred by double jeopardy.

This argument arises out of the district court's dismissal of Count II (violation of the AECA), which requires some explanation. The AECA prohibits the unlicensed export of items on the President's Munitions List, "[e]xcept as otherwise specifically provided in regulations issued under [the statute]." *See* 22 U.S.C. § 2778(b)(2). The regulations issued by the Department of Defense under the AECA contain a provision that information in the "public domain" is exempt from the Act's export controls. *See* 22 C.F.R. § 125.1(a). At trial, a former defense Department official testified that the Department considered materials released under the Freedom of Information Act to be in the "public domain." After that testimony, the trial court spoke to counsel in chambers off the record and indicated that he had "real problems" with the AECA charge. The next day, the Government made a motion to dismiss Count II, which the court granted. The court entered its action on the record as a dismissal.

Appellant argues that the trial court's dismissal of Count II (the AECA charge) after the conclusion of the government's evidence operated to bar further prosecution of Count I (conspiracy) and Count III (the CAAA charge). Appellant offers two theories in support of this contention. First, he argues that the dismissal of Count II was in fact a judgment of acquittal, and that the elements of the AECA and CAAA offenses are substantively identical; hence, he concludes, continued prosecution of Count III after the dismissal of Count II violated the double jeopardy clause. Second, he argues that in dismissing Count II, the trial court resolved (in appellant's favor) a factual issue central to the elements of Counts I and III; this issue having been resolved by a prior judgment, he argues, the doctrine of collateral estoppel—which the Supreme Court has recognized as a component of the double jeopardy clause, *see Ashe v. Swenson*, 397 U.S. 436, 443–44, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970)—barred further litigation on the issue and entitled him to acquittal on Counts I and III.

### A. *Acquittal on Identical Charges*

The double jeopardy clause, providing that no person shall "be subject for the same offense to be twice in jeopardy of life or limb," U.S. Const. Amend. V, protects defendants against a second prosecution after acquittal on an identical charge. *See Fong Foo v. United States*, 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962). Jeopardy attaches to a prosecution when the jury is impaneled and sworn. *United States v. Rojas*, 554 F.2d 938 (9th Cir.1977), supplemented, 574 F.2d 476. Appellant's argument depends on his showing both that the dismissal of Count II was in effect an acquittal and that Counts II and III are identical.

Appellant argues that the court's colloquy with the Defense Department witness demonstrates that the court was convinced that the materials were within the "public domain" and thus legally exportable under the AECA. Appellant argues that this resolved in his favor an element of the AECA charge and accordingly was an acquittal. We need not decide this issue, however, because even if the dismissal of Count II was in effect an acquittal, as appellant argues, he has failed to show that Counts II and III charged him with analytically identical offenses, such that continued prosecution on one charge after acquittal on the other constitutes double jeopardy. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) sets out the applicable test for determining whether "two separately defined crimes constitute the 'same offense' for double jeopardy purposes." *Simpson v. United States*, 435 U.S. 6, 11, 98 S.Ct. 909, 912, 55 L.Ed.2d 70 (1978). The *Blockburger* rule states:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

284 U.S. at 304, 52 S.Ct. at 182. Appellant maintains that the AECA and CAAA counts fail this test, because for each count

in this case the government was required to prove the following: that the defendant (1) willfully (2) exported to South Africa (3) items on the U.S. Munitions List (4) without a license. Appellant is mistaken. To violate the AECA, a defendant must willfully export without a license a Munitions List item not in the "public domain"; the export need not be to South Africa. To violate the CAAA, a defendant must willfully export a Munitions List item to South Africa; it makes no difference whether the item is in the "public domain." Thus, each count requires proof of facts that the other does not.

### B. *Resolution of Factual Element*

█ Appellant's second double jeopardy argument rests on the doctrine of collateral estoppel, which, as this court has noted, has been partially incorporated into the double jeopardy clause:

[T]he double jeopardy clause bars not only the retrying of identical claims but also bars further prosecution 'when an issue of ultimate fact has been determined by a valid and final judgment.'

*United States v. Martinez*, 785 F.2d 663, 666 (9th Cir.1986). Appellant argues that the dismissal of Count II resolved the issue of whether the manuals shipped to South Africa were covered by the export control laws, and therefore that the issue could not be resubmitted to the jury in Counts I and III.

We disagree. The dismissal of Count II at most resolved the issue of whether the manuals were in the "public domain" and hence exempted from the AECA by 22 C.F.R. § 125.1; but this factual resolution has no bearing on either Count I or Count III. The CAAA (Count III) permits no "public domain" exemption: as discussed above, *see supra* Part IVA, the statute forbids the export to South Africa of any item on the Munitions List, with the exceptions not relevant here. *See* 22 U.S.C. § 5067(b). Thus, even if the dismissal of Count II rested on a factual resolution, that resolution did not involve an element of Count III.

A similar analysis applies as to Count I. Even if appellant is correct that the dismis-

sal of Count II resolved the issue of whether the South Africa items were in the "public domain," we have already concluded that this issue is not an element of the conspiracy charge. *See supra* Part IVA. Even if the items that appellant actually took out of the country were lawfully exportable under the AECA, the jury could still have found all the elements of a *conspiracy* to violate the AECA. The government was not required to prove under the conspiracy count that the particular items exported in furtherance of the conspiracy were outside the public domain; thus the acquittal on Count II—if acquittal it was—did not resolve an "ultimate issue of fact" bearing on Count I. We conclude that conviction under Counts I and III were not barred by double jeopardy.

### C. *Congressional Intent to Create Multiple Penalties*

█ Finally, the appellant also offers a non-constitutional argument, related to double jeopardy, in support of his claim that Count III should be reversed. Appellant argues that *Simpson v. United States*, 435 U.S. 6, 12, 98 S.Ct. 909, 913, 55 L.Ed.2d 70 (1978) bars his prosecution. In *Simpson*, the Court held that a defendant could not be convicted under two separate statutes forbidding the use of dangerous weapons, when it was shown that Congress did not intend the statutes to create multiple criminal sanctions for a single crime. Appellant argues that in enacting the CAAA in 1986, Congress did not intend to create a separate penalty for Munitions List exports to South Africa in addition to existing penalties under the AECA. Rather, he argues, the CAAA was designed merely to "establish policy regarding the granting of licenses for exports to South Africa." Brief of Appellant at 17.

The problem with appellant's argument is that the CAAA has a quite distinct purpose from the AECA; whereas the latter is designed to protect against the national security threat created by the unrestricted flow of military information abroad, the former is designed to cut off the use of American resources to bolster apartheid.

It thus stands in stark contrast to the statutes at issue in *Simpson,* where the defendant was convicted under two laws, both designed to combat the use of dangerous weapons in felonies. *See* 435 U.S. at 10, 98 S.Ct. at 911. The CAAA is quite clearly designed as a criminal statute restricting exports to South Africa, and not simply a "policy statement" modifying the AECA.

## VII

### FIRST AMENDMENT

 Appellant's final argument is that the First Amendment bars the government from restricting the export of information that is already available to the public.[6] He insists that the data he sent abroad was available under the Freedom of Information Act, and therefore could be legally obtained by virtually anyone in the world. He contends that the First Amendment prohibits the application of the AECA and CAAA to the export of such publicly available information.

Our Court has already considered and rejected this argument. In *United States v. Edler Industries,* 579 F.2d 516 (9th Cir. 1978), we rejected an essentially identical challenge to the predecessor of the AECA. The defendant was convicted of exporting certain manufacturing designs that were on the Munitions List but were not classified. He challenged his conviction on First Amendment grounds, arguing that the government could not constitutionally prohibit the export of technological data that was widely distributed within the United States. In rejecting that claim, we explained that even assuming that the First Amendment offers some protection to the dissemination of technical data, the government has a strong interest in regulating the export of military information:

> The federal government undeniably possesses the power to regulate the international arms traffic.... As a necessary

incident to the power to control arms export, the President is empowered to control the flow of information concerning the production and use of arms. The authority to regulate arms traffic would be of negligible practical value if it encompassed only the exportation of particular military equipment but not the exportation of blueprints specifying the construction of the very same equipment.

579 F.2d at 520. We accordingly concluded that the government could permissibly restrict the flow abroad of data included in the Munitions List. 579 F.2d at 521. Finally, we held that the government's power to issue such restrictions was not affected by the domestic availability of the regulated data:

> Given the unquestionable legitimacy of the national interest in restricting the dissemination of military information, the claim of public availability in the United States is not a defense recognized by the Constitution.

579 F.2d at 522.

Appellant attempts to distinguish *Edler* from the present case by pointing out that the exported data in *Edler* was "cutting edge" technology and was not widely used in this country. Blue brief at 11. Whether or not this was factually true of the technology at issue in *Edler,* however, the *Edler* decision clearly assumed for purposes of its decision that the material was extensively available in the United States. *See* 579 F.2d at 518, 522.

Moreover, we believe *Edler* should not be read as permitting the government to restrict the export of only that information which is not widely available domestically. Under appellant's reading of *Edler,* if the government wished to prevent technical data from being sent to foreign powers, it would be required to suppress the information altogether, at home as well as abroad. This outcome would blur the fact that national security concerns may be more

---

**6.** The United States asserts that by failing to make a timely motion below challenging the constitutionality of the AECA and CAAA, appellant waived his right to make such a challenge at trial or on appeal. The record does not make

clear, however, whether the district court denied appellant's motion for untimeliness or on the merits. *See* RT 5–7. In light of this ambiguity, we address appellant's claim on the merits.

sharply implicated by the export abroad of military data than by the domestic disclosure of such data. Technical data that is relatively harmless and even socially valuable when available domestically may, when sent abroad, pose unique threats to national security. It would hardly serve First Amendment values to compel the government to purge the public libraries of every scrap of data whose export abroad it deemed for security reasons necessary to prohibit. We conclude that appellant's conviction does not violate the First Amendment.

The judgment below is AFFIRMED.