UNITED STATES of America,
Petitioner–Appellee,

v.

Khader Musa HAMIDE, et al.,
Respondents–Appellants.

No. 89–55462.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 8, 1990.

Decided Sept. 7, 1990.

**1148**

William J. Genego, ACLU, Santa Monica, Cal., for respondents-appellants.

Jeffrey A. Clair, Dept. of Justice, Washington, D.C., for petitioner-appellee.

Before HUG, BOOCHEVER and BEEZER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Khader Musa Hamide, Basher Amer, Michel Ibrahim Shehadeh, Julie Nuangugi Mungai, Amjad Mustafa Obeid, and Aymad Mustafa Obeid (collectively Hamide) appeal the district court's denial of their motion to vacate an order finding that the government's electronic surveillance of eight individuals, including the appellants, was lawful. We find that this court has no appellate jurisdiction because the order was not final, and we dismiss the appeal.

## FACTS

In December of 1986, the Immigration and Naturalization Service (INS) began deportation proceedings against eight aliens, including the six appellants, all of whom were arrested in early 1987 and eventually released. The INS claimed that the eight individuals were members of the Popular Front for the Liberation of Palestine, and charged them with being deportable under 8 U.S.C. § 1251(a)(6)(D), (G)(v), and (H) (1982), as aliens belonging to an organization that advocates the "doctrines of world communism" through written or printed publications. The eight, joined by others, filed a lawsuit in district court challenging the facial constitutionality of the "world communism" sections. The government subsequently withdrew the original charges against all eight on April 23, 1987, but reinstituted deportation proceedings under other provisions. The district court found the "world communism" and other provisions overbroad in violation of the first amendment. *American–Arab Anti–Discrimination Comm. v. Meese*, 714 F.Supp. 1060, 1083–84 (C.D.Cal.1989) *appeal docketed*, No. 89–55358 (9th Cir. August 10, 1990).

Of the six appellants in this case, four are nonimmigrant aliens charged by the government in the reinstituted proceedings with routine visa violations. Khader Musa Hamide and Shehadeh are permanent resident aliens charged with advocacy of or affiliation with organizations that advocate the unlawful destruction of property under 8 U.S.C. § 1251(a)(6)(F)(iii). That section is among those found unconstitutional in the district court. *American–Arab Anti–Discrimination Comm.*, 714 F.Supp. at 1083–84. At the time of this appeal, none of the appellants had received a final administrative order of deportation. An immigration judge had found Aymad Obeid and Amjad Obeid deportable, but both had pending applications for relief from deportation at the administrative level. Deportation proceedings against Mungai, Khader Musa Hamide, and Shehadeh had been stayed administratively awaiting the outcome of other judicial and administrative proceedings. Amer's deportation proceedings were pending before an immigration judge on post-trial briefing.

On March 10, 1987, in the course of the original deportation proceedings, the eight

aliens filed a motion before the immigration judge under 18 U.S.C. § 3504 (1982), requesting that the government affirm or deny the existence of electronic surveillance of any of the eight or their attorneys. The motion also requested a hearing on the adequacy of any government denial, or, if the government acknowledged surveillance, "a hearing concerning the legality of that surveillance and the extent to which evidence in the current proceedings was obtained as a result of that surveillance."

On April 15, 1987, the government responded that none of the evidence in the deportation proceedings had been gathered by electronic surveillance, without stating whether any such surveillance had occurred. The eight filed motions after deportation proceedings were reinstituted in June 1987 and again in December 1988 requesting affirmance or denial of the surveillance. The immigration court granted the last motion, and the government responded with a declaration by Michael P. Lindemann, the principal government attorney in the case.

Lindemann's declaration disclosed that five of the six appellants had been overheard on electronic surveillance. Lindemann also stated that there had been some video surveillance, and that the Federal Bureau of Investigation had placed a pen register on the telephone of one of the appellants. He asserted that the government would not use any of the surveillance in the immigration proceedings, and that "while attorneys of record in this case have been overheard, only a single conversation was in connection with this case, and that single conversation did not involve attorney-client communication and was not otherwise privileged." The declaration also stated that the government intended to seek a determination of the legality of the surveillance from the district court.

On February 15, 1989, the government filed in the district court a "Petition of the United States for Judicial Determination of Legality of Certain Electronic Surveillance" claiming authorization under § 1806(f) of the Foreign Intelligence Surveillance Act (FISA), 50 U.S.C. §§ 1801–1811 (1982).[1] The six appellants here were named as respondents. The petition stated that Hamide's counsel had "made a motion before the Immigration Judge to discover electronic surveillance and to suppress the use of that information on the ground that the electronic surveillances at issue were unlawful." This statement apparently refers to Hamide's motions requesting affirmance or denial of the surveillance, and a hearing on the legality of the surveillance if the existence of the surveillance was affirmed. The March 1987 motion also asserted "the right to object to and exclude from these proceedings any evidence or other information that was obtained as a result of unlawful electronic surveillance." Accompanying the petition was an in camera sealed exhibit of FISA materials relevant to the authorization of the surveillance, and an "Affidavit and Claim of Privilege of the Attorney General of the United States" asserting that "it would harm the national security of the United States to disclose or have an adversary hearing" with respect to the sealed FISA materials.

Hamide's attorneys attempted to file an unopposed application for an enlargement of time in which to respond to the government's petition on February 28, 1989. The clerk's office would not file the application, however, because the district court had issued a ruling on the government's petition that same day. The ruling held

> The court has reviewed all of the submitted applications, orders and materials

---

1. FISA created the Foreign Intelligence Surveillance Court, comprised of seven federal district court judges appointed by the Chief Justice. 50 U.S.C. § 1803(a). The statute requires, with some exceptions set out in *id.* § 1802(a)(1), that the government obtain a court order before it engages in foreign intelligence surveillance. *Id.* § 1804(a). The federal officer seeking surveillance must submit an application to one of the judges on the court. *Id.* The judge must make specific findings that the application for surveil-

lance is proper, and that probable cause exists to believe that "the target of the electronic surveillance is a foreign power or an agent of a foreign power." 50 U.S.C. § 1085(a)(3)(A). Records of the proceedings under FISA are maintained under security measures. *Id.* at § 1803(c). Section 1805(a)(3)(A) states that "no United States person may be considered a foreign power or an agent of a foreign power solely upon the basis of activities protected by the first amendment."

and determines that the electronic surveillance disclosed to this court in camera were legally obtained pursuant to prior order of a court of competent jurisdiction.

The court further determines that it is not necessary, to the determination of the legality of the electronic surveillances submitted to the court to disclose those applications, orders and materials or any portion thereof to respondents.

Hamide filed a motion for a new trial or for relief from judgment on March 3, 1989. The motion stated

Neither FISA nor the due process clause of the Fifth Amendment contemplate [sic] that petitions pursuant to 50 U.S.C. section 1806(f) will be disposed of without respondents having an opportunity for opposition and argument regarding the legality of the surveillance order, its implementation or the due process requirement for disclosure. 50 U.S.C. section 1806(g).

The government filed an opposition to the motion. Following argument by both sides at a hearing on April 17, 1989, the district court denied the motion for post-judgment relief. Hamide appeals from the district court order finding the surveillance legal and from the denial of the motion for a new trial or for relief from judgment.

## DISCUSSION

### APPELLATE JURISDICTION

■ 28 U.S.C. § 1291 confers jurisdiction on courts of appeals from final decisions of the district courts, and "embodies a strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals." *United States v. Nixon,* 418 U.S. 683, 690, 94 S.Ct. 3090, 3098, 41 L.Ed.2d 1039 (1974). The general rule is that discovery orders are reviewable only on appeal from a final judgment. Exceptions are limited to cases in which denial of immediate review would make any review impossible. *In re Subpoena Served on*

*Cal.Pub.Util.Comm.,* 813 F.2d 1473, 1476 (9th Cir.1987) (*In re PUC*).

1. *The district court's determination of legality was not a final order.*

■ Whenever the federal government intends to enter information obtained from FISA surveillance into any agency proceeding, it must notify the object of the surveillance, or the "aggrieved person," and the authority to which the information will be disclosed. 50 U.S.C. § 1806(c). After such notification, the district court is charged with determining the legality of the surveillance. *Id.* at § 1806(f). The district court's ruling that the surveillance of Hamide was lawful was made pursuant to 50 U.S.C. § 1806(g), which provides:

If the United States district court pursuant to subsection (f) of this section determines that the surveillance was not lawfully authorized or conducted, it shall, in accordance with the requirements of law, suppress the evidence which was unlawfully obtained or derived from electronic surveillance of the aggrieved person or otherwise grant the motion of the aggrieved person. If the court determines that the surveillance was lawfully authorized and conducted, it shall deny the motion of the aggrieved person except to the extent that due process requires discovery or disclosure.

The statute further specifies which orders are final:

Orders granting motions or requests under subsection (g) of this section, decisions under this section that electronic surveillance was not lawfully authorized or conducted, and orders of the United States district court requiring review or granting disclosure of applications, orders, or other materials relating to a surveillance shall be final orders and binding upon all courts of the United States and the several States except a United States court of appeals and the Supreme Court.

*Id.* at § 1806(h).[2] The language of the

---

2. Usually, under 50 U.S.C. § 1806(f) the government notifies the court or other authority of its intention to use the evidence obtained through surveillance, and the subject of the surveillance

files a motion to suppress or discover. A determination in the district court that the surveillance was legal results in a denial of the motion.

statute, on its face, thus only provides that decisions that electronic surveillance was *not* lawfully authorized are final orders. The implication is that decisions upholding the legality of surveillance are not final orders. The legislative history of FISA supports that interpretation. Although the House version of the bill would have made any FISA determination final and appealable immediately, the Conference agreement narrowed this approach and provided: "All orders regarding legality and disclosure shall be final and binding only where the rulings are against the Government." H.R.Conf.Rep. No. 1720, 95th Cong., 2d Sess. 32, *reprinted in* 1978 U.S.Code Cong. & Admin.News 4048, 4061.

We conclude that only rulings against the government are final for the purposes of appellate review. The order finding the surveillance of Hamide lawful is thus interlocutory, and we may not review it as a final order.

### 2. *Exception to finality requirement for appellate review.*

■ We now must determine whether the district court's order is reviewable as an exception to the finality requirement. Appellate review of interlocutory orders is allowed in a " 'limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims.' " *In re PUC,* 813 F.2d at 1476 (quoting *Nixon,* 418 U.S. at 691, 94 S.Ct. at 3099). The collateral order doctrine provides that orders that are not technically final are appealable if they "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the main action and (3) [are] unreviewable on appeal from a final judgment." *In re PUC,* 813 F.2d at

In this case, however, the government was the moving party although it had not notified the immigration judge of any intent to use the evidence, and so the determination that the surveillance was legal resulted in a grant of the government's motion. For finality purposes, the order is tantamount to a denial of Hamide's motion for disclosure and production of surveillance evidence which was filed with the immigration judge, and we so construe it.

1475 (citing *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978)); *see Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949).

In this case, the district court's order conclusively determines the disputed question of the surveillance's legality, and so resolves an important question separate from the deportation proceedings. Only the eventual reviewability of the order remains to be determined. If the district court's determination of legality will not be reviewable on appeal from a final deportation order, we may review it now.

### 3. *Hamide's claims will be reviewable on appeal from a final deportation order.*

A threshold question is whether any evidence from the challenged surveillance will be used by the government in the deportation proceedings. Because none of the deportation proceedings in this case is final, it is not clear how or whether the information gathered by FISA surveillance will be used.

The Lindemann declaration asserted that none of the FISA surveillance had been or would be used in connection with the deportation proceedings. If the surveillance is not used, then its legality will not be relevant to an appeal of a final deportation order, and review by this court will not be available on appeal from the deportation order. The appropriate challenge to the surveillance then would be a claim that the surveillance violated statutory and constitutional rights independent of the INS proceedings. Hamide has not briefed or argued those issues here, and we therefore do not consider such a hypothetical challenge.[3]

**3.** Hamide and counsel raised the issue of whether the surveillance violated Hamide's first amendment rights in a separate lawsuit filed in the District of Columbia, seeking a declaration that the surveillance violated their statutory and constitutional rights and an injunction to stop any ongoing surveillance. Shortly after oral argument in this appeal, the District of Columbia district court dismissed the suit for failure

Nevertheless, the possibility of use remains, and we must determine whether Hamide's challenges to the FISA determination would be reviewable on appeal from a final deportation order. Courts of appeals have reviewed FISA determinations favorable to the government after final judgments in criminal proceedings in which the FISA evidence was used. *See United States v. Sarkissian*, 841 F.2d 959, 964–65 (9th Cir.1988) (reviewing denial of motion to suppress FISA materials on appeal from criminal conviction); *United States v. Badia*, 827 F.2d 1458, 1462–64 (11th Cir.1987) (same), *cert. denied*, 485 U.S. 937, 108 S.Ct. 1115, 99 L.Ed.2d 275 (1988); *United States v. Cavanagh*, 807 F.2d 787, 789 (9th Cir. 1987) (same on appeal from entry of conditional guilty plea). When we have reviewed FISA determinations before the entry of a final judgment in the underlying action, we lacked appellate jurisdiction over that final judgment, so review of the FISA determination would not be available later. *See In re Kevork*, 788 F.2d 566, 568–69 (9th Cir.1986) (expedited appeal of FISA suppression motion where foreign (Canadian) criminal conviction pending; appellate jurisdiction assumed over district court's final decision under 28 U.S.C. § 1782, "Assistance to foreign ... tribunals"); *United States v. Ott*, 827 F.2d 473, 475–76 (9th Cir.1987) (appellate review of FISA suppression motion where underlying proceeding was court-martial).[4]

No case, however, addresses whether appellate review of a FISA determination would be available on appeal from a final deportation order. This court has jurisdiction to review all final orders of deportation made pursuant to the Immigration and Nationality Act. *INS v. Chadha*, 462 U.S. 919, 937–38, 103 S.Ct. 2764, 2777–78, 77 L.Ed.2d 317 (1983); 8 U.S.C. § 1105a(a) (1988). The final order of the immigration judge is subject to administrative appeal to the Board of Immigration Appeals (BIA) before this court may assume jurisdiction. *Vargas v. INS*, 831 F.2d 906, 907–08 (9th Cir.1987). The appeals court may review only those issues raised in the appeal to the BIA, except for constitutional claims over which the BIA does not have jurisdiction. *Id.* We must determine whether we could review the factual and legal issues related to the legality of the FISA surveillance in the context of an appeal from the BIA.

### a. Factual issues

■ This circuit will assume jurisdiction to review factual matters not directly decided in the deportation proceedings "when there has been a factual hearing on the issue equivalent to that required by [8 U.S.C. § 1252(b)]." *Abedi–Tajrishi v. INS*, 752 F.2d 441, 443 (9th Cir.1985). Where the immigration judge and the BIA refuse to review a factual issue, this court is without jurisdiction to consider the claim. *Mohammadi–Motlagh v. INS*, 727 F.2d 1450, 1452 (9th Cir.1984).

■ Even though there will not have been a factual hearing on the legality of the surveillance like that contemplated by the immigration statute, we find that the procedure has been adequate to ensure that the factual record is sufficiently developed to allow eventual appellate review. Because of the national security interests involved, the statute provides for in camera and ex parte review of the FISA documents on affidavit of the Attorney General. 50 U.S.C. § 1806(f). Any adversary hearing in the district court would be the exception. *Sarkissian*, 841 F.2d at 964; *see In re Grand Jury Proceedings*, 856 F.2d 685, 687 n. 3 (4th Cir.1988) ("So far, every FISA wiretap review has been *in camera* and *ex parte*."); *United States v. Belfield*, 692 F.2d 141, 147 (D.C.Cir.1982) ("The language of section 1806(f) clearly anticipates that an *ex parte, in camera* determination is to be the rule."). As in appeals of crimi-

---

to state a claim, relying in part on Judge Real's determination that the surveillance was legal. *American Civil Liberties Union Foundation of S. Cal. v. Thornburgh*, no. 89–2248–OG (D.D.C. June 26, 1990) (memorandum decision).

**4.** After the district court's ruling in *Ott*, the FISA evidence was introduced in the court-martial and Ott was convicted of attempting to sell classified information. *Ott*, 827 F.2d at 475 n. 3. It is not clear whether the conviction preceded Ott's appeal. Nevertheless, under 10 U.S.C. § 866, the underlying court-martial proceedings are not within the court of appeals' jurisdiction. Therefore, even if Ott appealed before the court-martial was final, we had jurisdiction over the appeal from the FISA order because appellate review of the final judgment was impossible.

nal cases involving FISA determinations, this court can inspect, in camera, the same classified documents reviewed by the district court to determine whether the surveillance was legal, and can determine whether the district court abused its discretion in refusing to disclose the contents of the FISA application. *Sarkissian,* 841 F.2d at 964–65; *see Badia,* 827 F.2d at 1463–64. The lack of a factual hearing thus does not make the record inadequate for appellate review.

We find that the factual issues involved in the district court's FISA determination would be reviewable on appeal from a final deportation order.

b. Legal issues

■ When only a legal issue is involved and a factual hearing is unnecessary, appellate jurisdiction encompasses legal determinations on which the final order is contingent, where the relief sought is inconsistent with the deportation order. *Chadha,* 462 U.S. at 938–39, 103 S.Ct. at 2777–78; *see Mohammadi–Motlagh,* 727 F.2d at 1452. If evidence from the surveillance is used in the deportation proceedings, the legal issues related to the district court's FISA determination therefore will be reviewable on appeal from a final deportation order if 1) the order depends on the evidence gathered through the FISA surveillance, and 2) Hamide seeks relief inconsistent with the order, such as cancellation of deportation.

The first requirement is easily met. If the surveillance evidence is material to the decision to deport, then this court will review the FISA determination. If the evidence is merely incidental to the final deportation order, then Hamide will have little incentive to challenge it in the context of the appeal from deportation. The second requirement is even more easily satisfied. Any appeal from a final deportation order likely will seek relief inconsistent with deportation.

* Jack McCormick is substituted for his predecessor, Henry Risley, as Warden of the Montana

We conclude that the material legal issues involved in the district court's determination of legality also are reviewable on appeal from a final deportation order. On the other hand, if the surveillance evidence is not used, or is not material to the deportation decision, Hamide's due process rights in that proceeding will not have been violated.

CONCLUSION

In the absence of a statutory or constitutional challenge independent of the INS proceedings, about which we express no opinion, review of the district court's surveillance determination must be limited to an appeal from a final deportation order. Because the district court's order finding the FISA surveillance lawful was not a final order, and because both the factual and the legal issues involved will be reviewable on appeal from a final deportation order, we find we lack jurisdiction over Hamide's appeal.

The appeal is DISMISSED.