ACLU FOUNDATION OF SOUTHERN
CALIFORNIA, et al., Appellants,

v.

William P. BARR, et al., Appellees.

No. 90–5261.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 8, 1991.

Decided Dec. 27, 1991.

Rehearing and Rehearing En
Banc Denied Feb. 26, 1992.

Kate Martin, Washington, D.C., with whom William J. Genego, Santa Monica, Cal., was on the brief, for appellants.

Douglas Letter, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and Jay B. Stephens, U.S. Atty., Washington, D.C., were on the brief, for appellees.

Before EDWARDS, WILLIAMS and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

This is an appeal from the district court's dismissal of a complaint for failure to state a claim upon which relief could be granted. Despite its simple procedural posture, the case presents complex questions regarding the Foreign Intelligence Surveillance Act (FISA) (50 U.S.C. §§ 1801–1811), and the

standards for determining the sufficiency of complaints aimed at uncovering and halting electronic surveillance, authorized by a specially-constituted federal court and conducted for the purpose of obtaining foreign intelligence information from foreign powers and agents of foreign powers.

There are twenty-four plaintiffs. Eight are aliens; of these, six are non-resident aliens, two are permanent resident aliens. The remaining plaintiffs are thirteen private attorneys who provided legal advice to these aliens and three organizations with which some of the attorneys were affiliated. The Complaint, as amended, comprises some thirty pages and more than seventy separately-numbered paragraphs. It seeks a declaratory judgment and an injunction against the Attorney General and other federal officials with respect to alleged electronic surveillance conducted, so plaintiffs claimed, in violation of FISA and of the First, Fourth, and Fifth Amendments to the Constitution.

In reviewing the district court's ruling we must decide what impact, if any, related proceedings conducted *in camera* and *ex parte* in a California federal district court should have on this case. We must also determine whether plaintiffs' allegations, "on information and belief," of FISA surveillance aimed at some of them are enough to withstand a motion under Rule 12(b)(6), Fed.R.Civ.P. Questions are also presented regarding whether FISA entitles the government to refuse to reveal ongoing foreign intelligence operations, whether individuals may sue for injunctions to prevent alleged violations of FISA, whether the First Amendment limits governmental investigations and whether the due process clause of the Fifth Amendment bars any overhearing of attorney-client conversations.

I

A

When they filed this Complaint, the eight alien plaintiffs were the subjects of deportation proceedings in California, where they resided. So far as we have been told,

the proceedings are not yet concluded. The government maintains that each alien belonged to an international terrorist group known as the Popular Front for the Liberation of Palestine. The alien plaintiffs deny this. Complaint ¶ 53.

In the deportation proceedings, in response to a motion filed under 18 U.S.C. § 3504 by six of the aliens, the government submitted a declaration of its chief attorney, Michael Lindemann, disclosing that the FBI had overheard five of the six— Khader Hamide, Michel Shehadeh, Julie Mungai, Basher Amer, and Amjad Obeid— during electronic surveillance authorized pursuant to FISA. Lindemann's declaration also recited that a pen register, authorized by the federal district court in the Central District of California, had been placed on Mungai's telephone. According to the declaration, several attorneys representing these aliens had also been overheard, but only one of the conversations pertained to the deportation proceedings, and that conversation did not involve an attorney-client communication. The government attorneys conducting the deportation proceedings had not been given access to any of the intercepted communications between the aliens and their attorneys. The declaration stated that none of the information obtained in the course of the surveillance had been, or would be, used against the aliens in the deportation proceedings. Lindemann did not identify the targets of the FISA surveillance disclosed in his declaration.

B

Before recounting the remaining background of this case, it will be helpful to describe the Foreign Intelligence Surveillance Act. Enacted in 1978, FISA sought to put to rest a troubling constitutional issue. For decades Presidents had claimed inherent power to conduct warrantless electronic surveillance in order to gather foreign intelligence in the interests of national security. When the Supreme Court, in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), overruled *Olmstead v. United States*, 277 U.S. 438,

48 S.Ct. 564, 72 L.Ed. 944 (1928), and held that the warrant requirement of the Fourth Amendment applied to electronic surveillance, the constitutionality of this longstanding executive practice was called into question. In the *Keith* case (*United States v. United States District Court,* 407 U.S. 297, 321–22, 92 S.Ct. 2125, 2138–39, 32 L.Ed.2d 752 (1972)), the Court explicitly reserved judgment on the issue. Thereafter, the Fifth Circuit in *United States v. Brown,* 484 F.2d 418 (1973), *cert. denied,* 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974), and the Third Circuit in *United States v. Butenko,* 494 F.2d 593 (en banc), *cert. denied,* 419 U.S. 881, 95 S.Ct. 147, 42 L.Ed.2d 121 (1974), sustained the President's power to conduct warrantless electronic surveillance for the primary purpose of gathering foreign intelligence information. *See also United States v. Truong,* 629 F.2d 908 (4th Cir.1980), *cert. denied,* 454 U.S. 1144, 102 S.Ct. 1004, 71 L.Ed.2d 296 (1982). In *Zweibon v. Mitchell,* 516 F.2d 594 (D.C.Cir.1975) (en banc), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976), however, the plurality opinion held that allegations of warrantless electronic surveillance in a complaint seeking damages stated a cause of action under the Fourth Amendment, at least insofar as the targets were not foreign powers or their agents, even though the Attorney General had authorized the surveillance for the purpose of obtaining foreign intelligence information.

By enacting FISA, Congress sought to resolve doubts about the constitutionality of warrantless, foreign security surveillance and yet protect the interests of the United States in obtaining vital intelligence about foreign powers. FISA thus created a "secure framework by which the Executive Branch may conduct legitimate electronic surveillance for foreign intelligence purposes within the context of this Nation's commitment to privacy and individual rights." S.Rep. No. 604, pt. 1, 95th Cong., 1st Sess. 15 (1977), *reprinted in* U.S.Code Cong. & Admin.News 1978, pp. 3904, 3916.

The centerpiece of the legislation was the formation of the United States Foreign Intelligence Surveillance Court (the FISA Court), a special tribunal composed of seven federal district judges designated by the Chief Justice. 50 U.S.C. § 1803(a). With several exceptions not here relevant, electronic surveillance of a foreign power or its agents may not be conducted unless the FISA Court authorizes it in advance. Before an application seeking authorization for surveillance may be filed with the FISA Court, the Attorney General must personally approve it. 50 U.S.C. §§ 1801(g), 1804(a). Each application must include the identity of the target of the surveillance, a statement of facts showing that the target is a foreign power or an agent thereof, and a certification that the purpose of the surveillance is to obtain foreign intelligence information that cannot reasonably be obtained by normal investigative techniques. 50 U.S.C. § 1804(a)(7).[1]

The FISA Court may not authorize surveillance unless it finds probable cause to believe the target is a foreign power or its agent; it must also find that "foreign intelligence information" is being sought. 50 U.S.C. § 1805(a)(3), (a)(5). FISA defines "foreign intelligence information" as:

(1) information that relates to, and if concerning a United States person is necessary to, the ability of the United States to protect against—

(A) actual or potential attack or other grave hostile acts of a foreign power or an agent of a foreign power;

(B) sabotage or international terrorism by a foreign power or an agent of a foreign power; or

(C) clandestine intelligence activities by an intelligence service or network of a foreign power or by an agent of a foreign power; or

(2) information with respect to a foreign power or foreign territory that re-

---

**1.** The certification must be "by the Assistant to the President for National Security Affairs or an executive branch official or officials designated by the President from among those executive officers employed in the area of national security or defense and appointed by the President with the advice and consent of the Senate." 50 U.S.C. § 1804(a)(7).

lates to, and if concerning a United States person is necessary to—

(A) the national defense or the security of the United States; or

(B) the conduct of the foreign affairs of the United States.

50 U.S.C. § 1801(e).

"United States person" means a United States citizen or "an alien lawfully admitted for permanent residence" (50 U.S.C. § 1801(i)). A United States person may not be considered a foreign power or agent, and thus a potential target, solely on the basis of the person's First Amendment activities. 50 U.S.C. § 1805(a)(3)(A). If the government proposes making a United States person the target, the FISA Court must also find that the certification required by § 1804(a)(7) is not "clearly erroneous." 50 U.S.C. § 1805(a)(5). In addition, the FISA Court must be satisfied that the application proposes appropriate procedures to minimize the acquisition and retention, and prohibit the dissemination, of information concerning unconsenting United States persons. 50 U.S.C. §§ 1805(a)(4), 1801(h).

The FISA Court may issue an order approving electronic surveillance "for the period necessary to achieve its purpose, or for ninety days, whichever is less." 50 U.S.C. § 1805(d)(1). Surveillance of a foreign power can be approved for up to one year. *Id.* "Extensions of an order ... may be granted on the same basis as an original order upon an application for an extension and new findings made in the same manner as required for an original order." 50 U.S.C. § 1805(d)(2). Among other things, the order must "direct" "that the minimization procedures be followed." 50 U.S.C. § 1805(b)(2)(A). The judge issuing the order is authorized to "assess compliance with the minimization procedures" while the surveillance is taking place or after it has ended. 50 U.S.C. § 1805(d)(3).

Federal district courts "shall" conduct *ex parte, in camera* reviews to determine whether FISA surveillance, undertaken pursuant to an order of the FISA Court, was "lawfully authorized and conducted" whenever the issue arises in a proceeding and the Attorney General, in an affidavit, represents that disclosure or an adversary hearing would harm the national security interests of the United States. 50 U.S.C. § 1806(f). FISA sets forth three circumstances in which the issue could arise: (1) in an administrative, criminal or civil proceeding when a governmental body gives notice of its plan to use the fruits of FISA surveillance against a person who has been subjected to the surveillance[2]; (2) when such a person moves to suppress the evidence obtained or derived from FISA surveillance; and (3) when such a person otherwise moves to discover or obtain information derived from FISA surveillance.[3] 50 U.S.C. § 1806(f). The court conducting a § 1806(f) review may disclose to the "aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance." *Id.*

C

After the filing of Lindemann's declaration in the California deportation proceedings, the United States invoked § 1806(f) by petitioning the United States District Court for the Central District of California for a determination of the legality of the FISA surveillance. The government stated that six of the alien plaintiffs in the present case[4] had "made a motion before the Immigration Judge to discover electronic surveil-

---

**2.** If the government intends to use or disclose information acquired through FISA surveillance in any administrative, civil or criminal proceeding, it must notify the party, and the appropriate tribunal, in advance. 50 U.S.C. § 1806(c).

**3.** Venue lies in the district court where the proceeding is pending or, if the matter is pending before some other tribunal, in the same district in which that tribunal is located. 50 U.S.C. § 1806(f).

**4.** Hamide, Shehadeh, Amer, Mungai, Amjad Obeid, and Ayman Obeid.

lance and to suppress the use of that information on the ground that the electronic surveillances at issue were unlawful." Petition of the United States for Judicial Determination of Legality of Certain Electronic Surveillance, *reproduced in* Joint Appendix at 46; *see also* Chief Judge Real's order, *United States v. Hamide*, Misc. No. 22789 (C.D.Cal. Feb. 28, 1989). The government submitted then-Attorney General Thornburgh's affidavit, which stated that disclosure of the FISA materials, or an adversary hearing about them, would harm the national security of the United States and that sealed exhibits presented to the district court contained "sensitive information concerning United States intelligence sources and methods and other information relating to United States efforts to conduct counterintelligence and counterterrorism investigations." Chief Judge Real, after conducting an *ex parte, in camera* review in compliance with § 1806(f), issued an order on February 28, 1989, deciding "that the electronic surveillance[s] disclosed to this court in camera were legally obtained pursuant to proper order of a court of competent jurisdiction" and that "it is not necessary to the determination of the legality of the electronic surveillances submitted to the court to disclose those applications, orders and materials or any portion thereof to respondents." *United States v. Hamide*, Misc. No. 22789 (C.D.Cal. Feb. 28, 1989).

The six aliens appealed Chief Judge Real's order to the United States Court of Appeals for the Ninth Circuit.

## D

On August 9, 1989, before the Ninth Circuit had ruled, plaintiffs brought this lawsuit. The Complaint, as amended, alleged that the eight alien plaintiffs had been and were continuing to be subject to illegal surveillance, that their communications with the thirteen plaintiff attorneys had been intercepted and that they were continuing to communicate with their attorneys. The allegations regarding ongoing surveillance were made on "information and belief." As to past surveillance, plaintiffs relied on the Lindemann declaration submitted in the deportation proceedings in California, which they attached as an exhibit to the Complaint.

On the government's motion under Rule 12(b)(6), Fed.R.Civ.P., the district court dismissed the Complaint for failure to state a claim upon which relief could be granted. The court held that Chief Judge Real's order had conclusively determined the legality of any past surveillance disclosed in the Lindemann declaration, that review here would amount to an impermissible collateral attack on that decision, and that in view of Chief Judge Real's order and § 1806(f), plaintiffs could not get discovery of any of the materials encompassed within the declaration. *ACLU Foundation of Southern California v. Thornburgh*, Civ. No. 89-2248, mem. op. at 9-10 (D.D.C. June 26, 1990). As to the claims of continuing surveillance, the court held that plaintiffs had no right to demand that the government confirm or deny the existence of such surveillance, or disclose materials relating to it, "absent requests made through appropriate FISA channels." *Id.* at 18. The court deemed this allegation, made on "information and belief" and supported only by the Lindemann declaration acknowledging that some of them had been subjected to surveillance in the past, "merely speculative" and concluded that since "plaintiffs cannot prove what they allege," they failed to state a cause of action. *Id.* at 17-18.

While this appeal was pending, the Ninth Circuit ruled. Although finding that Chief Judge Real's "order conclusively determine[d] the question of the surveillance's legality," an "important question separate from the deportation proceedings," the Ninth Circuit held that the order was not immediately appealable. *United States v. Hamide*, 914 F.2d 1147, 1151 (9th Cir.1990). The court of appeals believed it would have appellate jurisdiction if the FISA information were later used in the underlying proceeding, in which case the issues raised by the district court's FISA determination "would be reviewable on appeal from a final deportation order." *Id.* at 1153.

## II

Because we find the difference between past and present surveillance important, we will divide our analysis of the Complaint into two parts. In this section we will consider allegations about surveillance revealed in the Lindemann declaration and other alleged past surveillance; in the next we will consider allegations about supposed ongoing surveillance. A brief road map of what we decide regarding "past surveillance" may be of assistance. We hold in this part of the opinion that the six aliens who were respondents in the California federal court cannot raise statutory or constitutional claims attacking the legality of the surveillance upheld in the § 1806(f) proceeding. The two remaining alien plaintiffs have also alleged statutory and constitutional violations. Because they were not respondents, we do not distinguish between past and ongoing surveillance with respect to them. Accordingly, their claims are governed by our analysis in Part III. The remaining plaintiffs are the attorneys and organizations. Because they were not parties in the deportation proceedings and because they do not allege that they were targets of any FISA surveillance, they have stated no constitutional claims. Their only statutory claim relates to "minimization." For the reasons stated in Part III we hold they have failed to state a cause of action.

At the outset, a bit of winnowing is in order. Plaintiffs' first statutory claim rests on 50 U.S.C. § 1805(a)(3)(A), which instructs the FISA Court that it may not find probable cause to believe that a "United States person" is a "foreign power or an agent of a foreign power"—and thus a proper "target of electronic surveillance" under FISA—"solely upon the basis of [that person's] activities protected by the first amendment."[5] Although one would hardly know it from the Complaint, § 1805(a)(3)(A) turns out to be irrelevant to twenty-two of the twenty-four plaintiffs in this case.

Among the eight alien plaintiffs, only Khader Hamide and Michel Shehadeh, who are permanent resident aliens, fit within the definition of "United States persons" to which § 1805(a)(3)(A) might apply. There are six other alien plaintiffs. Four of them (Amer, Mungai, Amjad Obeid and Ayman Obeid) were parties in the § 1806(f) proceeding; two (Sharif and Barakat) were not. All six are non-resident aliens who entered the United States on the basis of student or visitors visas between 1975 and 1983. None of them therefore qualify as a "United States person"—that is, in the case of an individual, a United States citizen or an alien lawfully admitted for permanent residence. 50 U.S.C. § 1801(i). *See United States v. Megahey,* 553 F.Supp. 1180, 1194–95 (E.D.N.Y.1982), *aff'd,* 729 F.2d 1444 (2d Cir.1983). This leaves Hamide and Shehadeh holding the only potential § 1805(a)(3)(A) claim. We say "potential" because, by its terms, § 1805(a)(3)(A) would apply only if they had been targets of FISA surveillance,[6] something the government neither confirms nor denies. The idea that they were targets must be inferred from the following allegation, made "[o]n information and belief": "defendants' surveillance of plaintiffs was based solely upon

---

**5.** § 1805. Issuance of order
  (a) Necessary findings
    Upon an application made pursuant to section 1804 of this title, the judge shall enter an ex parte order as requested or as modified approving the electronic surveillance if he finds that—
    ....
      (3) on the basis of the facts submitted by the applicant there is probable cause to believe that—
      (A) the target of the electronic surveillance is a foreign power or an agent of a foreign power: *Provided,* That no United States person may be considered a foreign power or an agent of a foreign power solely upon the basis

of activities protected by the first amendment to the Constitution of the United States; ....

**6.** The thirteen attorneys and three organizations who also appear as plaintiffs may be "United States person[s]," but they do not even purport to have been "target[s] of electronic surveillance" under § 1805(a)(3)(A). The Complaint merely alleges that the attorneys (or some of them) were overheard during FISA-authorized surveillance directed at their clients. Complaint ¶ 40. Since § 1805(a)(3)(A) applies only to a "target" of surveillance, it cannot be violated by the mere overhearing of someone who is not a target.

plaintiffs' political beliefs, statements and associations, all of which are protected by the Constitution." Complaint ¶ 47.

█ When we assume the truth of this allegation we are left with nothing more than a contention that the FISA Court erred in finding probable cause to believe Hamide and Shehadeh were agents of a foreign power, a finding § 1805(a)(3)(A) directs the Court not to make solely on the basis of a United States person's First Amendment activities. With respect to the surveillance covered by the Lindemann declaration, this does not state a cause of action. Attacks on the FISA Court's order authorizing surveillance are foreclosed by Chief Judge Real's decision, finding no violation of FISA. Hamide and Shehadeh were respondents in that case. Chief Judge Real's order, understandably terse in light of the constraints imposed by § 1806(f), "conclusively determines the disputed question of the surveillance's legality" (*United States v. Hamide*, 914 F.2d at 1151). The district court in this case therefore correctly refused to allow these plaintiffs to relitigate the question whether the government violated § 1805(a)(3)(A), a question necessarily within the scope of the § 1806(f) proceeding.

█ We reach the same conclusion with respect to the claim of the alien plaintiffs who were respondents in *Hamide* that subjecting them to electronic surveillance solely on the basis of their First Amendment-protected activities violated their First and Fourth Amendment rights. This claim is broader than the alleged violation of § 1805(a)(3)(A) because, as plaintiffs point out, it does not depend on whether the targeted alien qualified as a "United States person" under FISA. Even nonresident aliens, plaintiffs say, are entitled to the full protection of the First and the Fourth Amendments. But insofar as this claim concerns surveillance disclosed in the Lindemann affidavit and reviewed by Chief Judge Real, it is of no moment that it is framed as a constitutional violation. When a district court conducts a § 1806(f) review, its task is not simply to decide whether the surveillance complied with FISA. Section 1806(f) requires the court to decide whether the surveillance was "lawfully authorized and conducted." The Constitution is law. Once the Attorney General invokes § 1806(f), the respondents named in that proceeding therefore must present not only their statutory but also their constitutional claims for decision.[7] Although there will be no adversary hearing, we have held that the procedure mandated by § 1806(f) is an acceptable means of adjudicating the constitutional rights of persons who have been subjected to FISA surveillance. *United States v. Belfield*, 692 F.2d 141, 148–49 (D.C.Cir.1982). *Accord United States v. Ott*, 827 F.2d 473, 476–77 (9th Cir.1987).[8]

█ For the same reasons, the district court properly dismissed the claims of the six alien plaintiffs who were respondents in *Hamide* that the government's overhearing of their conversations with their attorneys violated FISA's "minimization" requirements and deprived them of due process under the Fifth Amendment.[9] Parties who

---

7. Congress directed the court, in an *in camera, ex parte* proceeding pursuant to § 1806(f), "to determine whether the surveillance was authorized and conducted in a manner that did not violate any constitutional or statutory right" of the person aggrieved. S.REP. No. 604, pt. 1, 95th Cong., 1st Sess. 57 (1977), *reprinted in* U.S.Code Cong. & Admin.News 1978, pp. 3904, 3959; S.REP. No. 701, 95th Cong., 2d Sess. 63 (1978), *reprinted in* U.S.Code Cong. & Admin.News 1978, pp. 3973, 4032.

8. Plaintiffs contend that they were not given sufficient time to present their arguments to Chief Judge Real before he issued his order. We express no opinion on this question. It has no bearing on the authority of the district court

here to adjudicate claims within the exclusive jurisdiction of the § 1806(f) court.

9. FISA defines "minimization procedures" to mean "specific procedures, which shall be adopted by the Attorney General ... to minimize the acquisition and retention, and prohibit the dissemination, of nonpublicly available information concerning unconsenting United States persons consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence information." 50 U.S.C. § 1801(h)(1). The FISA Court will not authorize electronic surveillance unless it finds that the minimization procedures proposed in the government's application comply with § 1801(h). 50 U.S.C. § 1805(a)(4). In its order,

have been subjected to FISA surveillance, determined to have been lawful after a § 1806(f) proceeding, cannot circumvent that provision by bringing their statutory and constitutional claims in another court.

■ We add one further point. The surveillance at issue in *United States v. Hamide* had ended long before this suit was filed. With respect to that surveillance, plaintiffs wanted the district court to issue a ruling declaring the surveillance to have been unlawful. *Cf. O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 675–76, 38 L.Ed.2d 674 (1974). Apart from all else, plaintiffs had no "right" to such a declaration. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides only that a district court "may" declare the "rights and other legal relations" of the parties, not that it must. The decision whether to grant this relief is discretionary. *Zemel v. Rusk*, 381 U.S. 1, 19, 85 S.Ct. 1271, 1281, 14

L.Ed.2d 179 (1965); *Hanes Corp. v. Millar*, 531 F.2d 585, 591 (D.C.Cir.1976). The fact that Chief Judge Real already declared those rights is sufficient, in itself, to show that claims concerning this surveillance are not ones upon which such discretionary relief should have been granted in any event.[10] *See generally Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494–95, 62 S.Ct. 1173, 1175–76, 86 L.Ed. 1620 (1942); *National Wildlife Federation v. United States*, 626 F.2d 917, 923, 926–27 (D.C.Cir. 1980).

### III

#### A

With respect to surveillance they assert is ongoing, plaintiffs advance statutory and constitutional claims identical to those they based on past surveillance.[11] The Complaint's allegations that the alien plaintiffs

---

the FISA Court must specifically direct that the approved minimization procedures "be followed." 50 U.S.C. § 1805(b)(2)(A).

We do not know whether plaintiffs' statutory claim is that the "minimization procedures" adopted by the Attorney General and approved by the FISA Court were inadequate, or that the officers conducting the surveillance failed to comply with the procedures. In granting the government's motion to dismiss, the district court did not mention the subject and the Complaint is silent on the matter, containing no references to any violation of FISA's "minimization" requirements. What appears is merely the assertion that attorneys were overheard talking with clients about matters related to the deportation proceedings and the general allegation that "[d]efendants' surveillance of plaintiffs violates [FISA]." Complaint ¶ 67.

At all events, the legality of the government's interception of conversations between the attorneys and the aliens mentioned in the Lindemann declaration was before Chief Judge Real. Section 1806(f) requires the district court to decide not only whether the surveillance was "lawfully authorized" but also whether it was lawfully "conducted."

**10.** We do not therefore discuss in this part the sufficiency of the allegations of past surveillance made "on information and belief" by the two other alien plaintiffs—Sharif and Barakat. They were not respondents in *Hamide* and are therefore not covered by Chief Judge Real's order. They claim a continuing injury from allegedly illegal FISA surveillance of them in the past on the ground that the government has compiled and is maintaining records revealing how they exercised their First Amendment

rights. Complaint ¶¶ 61, 72. (The relief they seek seems to be in "the nature of mandamus" (28 U.S.C. § 1361)—an order compelling the defendants to remove all such records and turn them over to the plaintiffs. Complaint ¶ 2; *id.* ¶¶ 4 & 5 (Prayer for Relief).) Whether they have a cause of action relating to any alleged FISA surveillance directed at them, past or present, is governed by our analysis in Part III of the opinion.

With respect to the remaining plaintiffs—the thirteen attorneys and the three organizations—they do not contend that *their* constitutional rights were violated; they describe the alleged constitutional claims and argue in support of them solely in terms applicable to the alien plaintiffs. Brief for the Appellants at 14–17. As to the statute, the attorney and organizational plaintiffs have no statutory claim under § 1805(a)(3)(A) for reasons already given. *See supra* note 6. Their only potential claim regarding past surveillance, therefore, must be that the government violated FISA's "minimization" requirements. In Part III of the opinion we discuss why FISA does not support a cause of action for alleged statutory claims of this sort.

**11.** Plaintiffs also allege a violation of the Privacy Act, 5 U.S.C. § 552a(e)(7). That provides no independent basis for relief, for as plaintiffs themselves recognize, any Privacy Act violation is completely contingent upon their other claims. Appellants' Brief at 16 n. 14. Plaintiffs have also failed to argue to this court the equal protection challenge mentioned in their Complaint, ¶ 73, and we therefore will not consider it.

are targets of FISA surveillance solely on the basis of their First Amendment activities states, they contend, a claim that the surveillance is being conducted in violation of § 1805(a)(3)(A) and a claim that the surveillance is violating the First and Fourth Amendments. The allegations that attorney-client conversations are being intercepted, they argue, state a claim that the surveillance is violating FISA's "minimization" requirements, and a claim under the due process clause of the Fifth Amendment. The district court dismissed these portions of the Complaint on the ground that the allegations of ongoing surveillance were speculative and unsupported by "any specific facts." Mem. op. at 15. Since there is "no general right to demand that the government disclose any foreign intelligence surveillance, past or present, apart from disclosures made through the proper FISA channels" (*id.*), the court believed plaintiffs could not "prove what they allege" (*id.* at 18) and therefore granted the government's Rule 12(b)(6) motion.

We agree that this aspect of the Complaint does not reveal much in the way of specific facts. The allegations are broad and conclusory and appear to rest on nothing more than sheer conjecture. Surveillance in the past does not prove current surveillance. Still less does it show that any of the alien plaintiffs are targets or, even if they are, that they were chosen on some illicit basis. But granting all of this, we cannot sustain the district court's dismissal of the Complaint for the reasons it gave.

■■■■ Rule 12(b)(6) is not a device for testing the truth of what is asserted or for determining whether a plaintiff has any evidence to back up what is in the complaint. *Dioguardi v. Durning,* 139 F.2d 774 (2d Cir.1944). If a complaint's factual allegations, and the reasonable inferences derived from them, would support a legal theory entitling the plaintiff to some relief, a Rule 12(b)(6) motion should be denied. *Wells v. United States,* 851 F.2d 1471, 1473

(D.C.Cir.1988), *cert. denied,* 488 U.S. 1029, 109 S.Ct. 836, 102 L.Ed.2d 969 (1989). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations," *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1988), or, we add, a judge's belief that the plaintiff cannot prove what the complaint asserts. *See* 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE ¶ 1357, at 340 (2d ed. 1990).

■■■■ The government argues for a different standard for cases challenging FISA surveillance, a standard requiring plaintiffs to recite detailed facts in the complaint showing that they could prove their claims without discovery, which the government contends they would not get under FISA. The argument is at odds with the decisions just cited and others, such as *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Sinclair v. Kleindienst,* 711 F.2d 291, 293 (D.C.Cir.1983); and *Halkin v. Helms,* 690 F.2d 977, 999 (D.C.Cir. 1982). The Federal Rules of Civil Procedure "do not require a claimant to set out the precise facts on which the claim is based." *Sinclair v. Kleindienst,* 711 F.2d at 293. In *Sinclair* we rejected the government's protest that the complaint did not contain specific facts supporting the allegations of unconstitutional domestic surveillance. The only difference here is that foreign intelligence surveillance, authorized pursuant to FISA, is involved. That difference is important, as we shall discuss in a moment, but not to the question whether a complaint can survive a Rule 12(b)(6) motion.[12]

---

12. The government describes *United Presbyterian Church in the U.S.A. v. Reagan,* 738 F.2d 1375 (D.C.Cir.1984), as holding that "allegations that a person has already been subject to sur-

veillance and was threatened with it again as a result of protected activity were insufficient to support a cause of action." Appellees' Brief at 27. If that were an accurate recital of *United*

There is a line of decisions in this court that may appear to support the government's position. In *Bivens* actions requiring proof of malice, we have imposed a "heightened pleading standard" when the official moves for dismissal of the complaint or for summary judgment on the ground of qualified immunity. "[B]are allegations of improper purpose do not suffice to drag officials into the mire of discovery." *Smith v. Nixon*, 807 F.2d 197, 200 (D.C.Cir.1986). We recently summarized the state of the law this way:

> Inquiry into subjective intent unrelated to knowledge of the law is permissible where the constitutional violation turns on an unconstitutional motive. Nonetheless, under this court's heightened pleading standard, in order to obtain even limited discovery, such intent must be pleaded with specific, discernible facts or offers of proof that constitute direct as opposed to merely circumstantial evidence of the intent.

*Siegert v. Gilley*, 895 F.2d 797, 802 (D.C.Cir.1990), *aff'd on other grounds,* —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). The government did not mention *Siegert* or our other similar decisions, perhaps because the Supreme Court had not yet decided *Siegert* when we heard argument and because the writ of certiorari to this court might have been thought to cast doubt upon them. *See* 111 S.Ct. at 1796 (Marshall, J., dissenting). (As it turned out the Court decided *Siegert* on another ground without reaching the questions raised in the certiorari petition about the "heightened pleading standard.")

In any event, our practice, which Justice Kennedy described as a "departure from the usual pleading requirements of Federal Rules of Civil Procedure 8 and 9(b), and ... the normal standard for summary judgment under Rule 56," 111 S.Ct. at 1795 (concurring opinion), does not assist the government here. In addition to the obvious point that this is not a *Bivens* action, there are other, important distinctions. In *Bivens* suits, the qualified immunity defense protects officials not only from having to defend at trial, but also from having to endure the preliminaries. By requiring allegations of the specific facts needed to overcome the defense, we have enabled district judges to weed out baseless claims, without disturbing the possibly meritorious cases in which plaintiffs need some discovery in order to vindicate their constitutional rights. Insofar as FISA is concerned, however, problems of a different sort arise when plaintiffs file actions seeking injunctive relief against allegedly ongoing foreign security surveillance. If the government is forced to admit or deny such allegations, in an answer to the complaint or otherwise, it will have disclosed sensitive information that may compromise critical foreign intelligence activities.[13] This is true regardless of how specific the factual allegations of the complaint happen to be. Furthermore, in view of § 1806(f), even plaintiffs who are able to satisfy some heightened pleading standard would not

---

*Presbyterian,* which we doubt, *see* 738 F.2d at 1380–81, still it would lend no support to the government here. Plaintiffs in this case are not alleging that they are merely "threatened" with surveillance under FISA; they assert that they are currently targets.

**13.** The government makes the point, with which we agree, that under FISA it has no duty to reveal ongoing foreign intelligence surveillance. The notice requirement contained in FISA relates to emergency surveillance, authorized by the Attorney General without the FISA Court's prior approval: if the FISA Court does not subsequently approve the emergency surveillance, the Court has the discretion to notify "United States persons subject to" it that it had occurred and that information was or was not obtained.

50 U.S.C. § 1806(j). Even then, upon an *ex parte* showing of good cause, the FISA Court must forego giving the notice. *Id.* In any event, the Court gives notice only after the surveillance is concluded, not while it is underway. "A requirement of notice in all cases," Congress decided, "would have the potential of compromising the fact that the Government had focused an investigation on the target. Even where the target is not, in fact, an agent of a foreign power, giving notice to the person may result in compromising an on-going foreign intelligence investigation because of the logical inferences a foreign intelligence service might draw from the targeting of an individual." S.Rep. No. 604, *supra,* at 59, *reprinted in* U.S.Code Cong. & Admin.News 1978, at pp. 3960–61.

automatically be entitled to begin engaging in even limited discovery.

We think the legitimate concerns about compromising ongoing foreign intelligence investigations should be recognized not at the pleading stage but in the event the government moves for summary judgment. Rule 56 is the proper method of "isolat[ing] and dispos[ing] of factually unsupported claims," *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In a Rule 56 motion, which may be filed before an answer, the government would not be required to "support its motion with affidavits or other similar materials *negating,*" for example, plaintiffs' claim that they, or some of them, are targets of ongoing surveillance based solely on their First Amendment activities. 477 U.S. at 323, 106 S.Ct. at 2552 (italics by the Supreme Court). The government would need only assert that plaintiffs do not have sufficient evidence to carry their burden of proving ongoing surveillance and whatever additional facts were required to establish the cause of action. If plaintiffs are ultimately unable to come forward with such evidence, the district court must conclude that there is no "genuine" dispute about these material facts and enter summary judgment in favor of the government. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). We recognize that in the usual case some discovery is permitted before the court rules on a motion for summary judgment, especially one filed by the defendant before answering the complaint. *See* Fed.R.Civ.P. 56(f). But the normal rules regarding discovery must be harmonized with FISA and its procedures, notably § 1806(f)—which applies "notwithstanding any other law" and which is designed to prevent disclosure of information relating to FISA surveillance in adversary proceedings. As a consequence, even plaintiffs who defeat summary judgment motions would not be entitled to obtain any of the materials relating to the authorization of the surveillance or the evidence derived from it unless the district court, in an *ex parte, in camera* proceeding, first determined that the surveillance was not "lawfully authorized and conducted." While this could mean that the ultimate issue in the case would be decided before discovery, that is the necessary consequence of the procedure outlined in § 1806(f), a procedure we have found to be adequate for the adjudication of constitutional rights in this sensitive area (*see United States v. Belfield,* 692 F.2d at 148–49).

While we have concluded that the district court should not, for the reasons it gave, have granted the government's Rule 12(b)(6) motion and dismissed plaintiffs' claims relating to ongoing FISA surveillance, that is not the end of the matter. A question of law still remains. It is whether, on the facts plaintiffs have alleged, they have stated statutory or constitutional claims upon which relief can be granted.[14]

### B

As to statutory claims, we hold that plaintiffs have failed to state a cause of action. No provision in FISA authorizes private actions in the federal district courts to enjoin surveillance on the basis of statutory violations. Congress gave the FISA Court original and exclusive jurisdiction to decide, after *ex parte* proceedings designed to protect the rights of all concerned, whether the government should be permitted to conduct electronic surveillance of foreign powers and their agents. 50 U.S.C. § 1805. Injunction actions in the district courts could be used to circumvent the elaborate procedures Congress put in place. If a district court could restrain the government from conducting a particular foreign

---

14. The district court assumed that the alleged ongoing surveillance, like the surveillance revealed in the Lindemann declaration, had been authorized by the FISA Court. This is a fair reading of the Complaint and plaintiffs do not appear to contest it. The Complaint recites Lindemann's declaration, with its disclosure of FISA surveillance, not only in support of the allegation of past surveillance but also as a basis for inferring that what happened earlier was continuing. It thus appears that all of the allegedly illegal and unconstitutional ongoing surveillance is FISA surveillance.

security surveillance, the FISA Court's authorization order would be deprived of any effect, a result Congress did not envision and could not have intended. Injunctions would prevent the government from proceeding with its investigation, yet as far as the federal judiciary is concerned, Congress entrusted decisions whether to permit foreign security surveillance to the FISA Court, not the federal district courts. Furthermore, Congress established a FISA "court of review," a specially-constituted appellate court of three federal judges designated by the Chief Justice. 50 U.S.C. § 1803(b). The FISA court of review has exclusive jurisdiction over appeals from FISA Court decisions refusing to grant government applications to conduct FISA surveillance. 50 U.S.C. § 1803(b), (c) & (d). A district court's restraining order would have the same effect as an order of the FISA Court denying the government's application, yet the government would be forced to seek review of orders granting injunctions in the federal courts of appeal pursuant to 28 U.S.C. § 1292, rather than in the FISA court of review, which conducts its proceedings "as expeditiously as possible" and maintains "security measures established by the Chief Justice in consultation with the Attorney General and the Director of Central Intelligence." 50 U.S.C. § 1803(c). Permitting suits in the district courts to restrain FISA surveillance on the basis of statutory violations would, in short, conflict with the system of judicial authorization FISA established.

This is not to say that the legality of FISA surveillance may not be considered by federal judges other than those on the FISA Court or the FISA court of review. FISA recognizes two private remedies. Both are after-the-fact, rather than prospective: evidence obtained in violation of FISA may be suppressed (50 U.S.C. § 1806(g)); and damages may be imposed for surveillance unlawfully conducted (50 U.S.C. § 1810). *See United States v. Pelton,* 835 F.2d 1067, 1075–76 (4th Cir.1987), *cert. denied,* 486 U.S. 1010, 108 S.Ct. 1741,

100 L.Ed.2d 204 (1988); *United States v. Cavanagh,* 807 F.2d 787, 790–91 (9th Cir. 1987); *United States v. Duggan,* 743 F.2d 59, 79 (2d Cir.1984); *United States v. Megahey,* 553 F.Supp. 1180 (E.D.N.Y.1982), *aff'd,* 729 F.2d 1444 (2d Cir.1983). Congress also anticipated that issues regarding the legality of FISA-authorized surveillance would arise in civil proceedings and, as we have discussed, it empowered federal district courts to resolve those issues, *ex parte* and *in camera* whenever the Attorney General files an appropriate affidavit under § 1806(f), as he did before Chief Judge Real. However, "Congress was adamant in enacting FISA that the 'carefully drawn procedures' of [§ 1806(f) ] are not to be 'bypassed by the inventive litigant using a new statute, rule or judicial construction.' " *United States v. Belfield,* 692 F.2d at 146, quoting S.Rep. No. 701, 95th Cong., 2d Sess. 63 (1978), *reprinted in* U.S.Code Cong. & Admin.News 1978, pp. 3973, 4033; H.R.Rep. No. 1283, 95th Cong., 2d Sess. 91 (1978). Section 1806(f) covers cases—that is, any "trial, hearing, or other proceeding"—in which the United States or a state intends to use or disclose evidence derived from FISA surveillance (50 U.S.C. § 1806(c) & (d)). Section 1806(f) may also be invoked by the Attorney General when, in an action before any federal or state "court or other authority," an "aggrieved person," pursuant to a statute or rule, moves to "discover or obtain" information relating to the FISA Court's authorization of the surveillance or evidence derived from the government's investigation.

Suits for injunctions against ongoing FISA surveillance fit within neither category. Injunction actions are not motions to "discover or obtain" materials relating to or derived from FISA surveillance; they are actions seeking judicial orders to halt surveillance. Not only does § 1806(f) not create or recognize a cause of action for an injunction or for a declaratory judgment, but the scheme it sets up makes clear that nothing in FISA can be read to create such a cause of action.[15] In the face of Con-

---

**15.** As then-Judge Scalia stated for the court:

We note in this regard that the discretionary relief of declaratory judgment is, in a context

gress' intent to limit the statutory remedies, the judiciary may not devise a different system, outside FISA's "carefully drawn procedures," for enforcing the statute's commands. *Cf. Deckert v. Independence Shares Corp.*, 311 U.S. 282, 287–88, 61 S.Ct. 229, 232–33, 85 L.Ed. 189 (1940). Plaintiffs' allegations of statutory violations therefore do not state a claim upon which relief may be granted.

### C

█ This brings us to plaintiffs' constitutional claims. Plaintiffs, in their Complaint and in their submissions to us, contend that whenever the government conducts surveillance solely on the basis of the target's protected activities it violates the First and Fourth Amendments. At oral argument the government conceded that, notwithstanding FISA, there may be an independent cause of action to enjoin ongoing foreign security surveillance conducted in violation of the Constitution. Oral Argument Tr. at 30–35. We accordingly assume that such constitutional injunction suits survive for targets of FISA surveillance. As to the precise nature of this constitutional cause of action, however, the government is silent.[16] The governing legal principle is as yet rather broad in its outlines, but at any rate probably far narrower than plaintiffs suppose. The government is not limited to investigating crimes already fully consummated. If an organization advocates terrorist acts in violation of federal law, for example, the government surely could investigate it for that reason even if the advocacy were protected by the First Amendment because it was not directed to "producing imminent lawless action" and was not likely to do so. *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969). As the Sev-

enth Circuit, sitting *en banc*, put it: "The FBI cannot hope to nip terrorist conspiracies in the bud if it may not investigate proto-terrorist organizations. That is why, as cases such as *Zurcher v. Stanford Daily*, 436 U.S. 547, 563–67 [98 S.Ct. 1970, 1980–82, 56 L.Ed.2d 525] (1978); *Heller v. New York*, 413 U.S. 483, 488–93 [93 S.Ct. 2789, 2792–95, 37 L.Ed.2d 745] (1973); *Branzburg v. Hayes*, 408 U.S. 665, 693–95 [92 S.Ct. 2646, 2662–63, 33 L.Ed.2d 626] (1972); *Reporters Comm. for Freedom of Press v. American Tel. & Tel. Co.*, 593 F.2d 1030, 1052 (D.C.Cir.1978), [*cert. denied*, 440 U.S. 949 [99 S.Ct. 1431, 59 L.Ed.2d 639] (1979),] make clear, the FBI would not be violating the First Amendment ... if it decided to investigate a threat that was not so immediate as to permit punitive measures against the utterer." *Alliance to End Repression v. City of Chicago*, 742 F.2d 1007, 1015–16 (7th Cir.1984). Of course, if the threats were advanced in only the vaguest and most general terms, and if after some investigation it became clear that the group's only menace was "rhetorical and ideological," the government would err by unnecessarily prolonging its investigation. *Id.* at 1016.

█ On the other hand, the government may be violating the First Amendment when it investigates someone because it dislikes the person's political views. Such an investigation would necessarily have no other, legitimate purpose. The Seventh Circuit so indicated in *Alliance to End Repression*, 742 F.2d at 1015, and we have held, in a *Bivens* action for damages, that government agents violate the Constitution when they conduct surveillance with the intent of deterring membership in or destroying an association engaged in lawful activities. *Hobson v. Wilson*, 737 F.2d 1, 29 (D.C.Cir.1984), *cert. denied*, 470 U.S.

such as this where federal officers are defendants, the practical equivalent of specific relief such as injunction or mandamus, since it must be presumed that federal officers will adhere to the law as declared by the court. Such equivalence of effect dictates an equivalence of criteria for issuance. *See Samuels v. Mackell*, 401 U.S. 66, 73, 91 S.Ct. 764, 768, 27 L.Ed.2d 688 (1971).

*Sanchez–Espinoza v. Reagan*, 770 F.2d 202, 208 n. 8 (D.C.Cir.1985). *See also* 28 U.S.C. § 2202 ("Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.").

**16.** Its Brief in this court does not address the subject.

1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). The allegations in plaintiffs' Complaint, although not framed in precisely these terms, could be interpreted to support such a cause of action. *See* Complaint ¶¶ 47–56. On remand plaintiffs will be able to clarify their position. If they wish—and believe themselves able—to articulate a *Hobson*-type claim they of course may attempt to do so, subject to the procedures we have discussed above.

■■■■ The remaining constitutional claim is based on the allegation that ongoing FISA surveillance is intercepting conversations between the plaintiff aliens and their attorneys concerning deportation proceedings and related legal matters. Complaint ¶¶ 5–7, 29. No further detail is provided. Citing decisions such as *Rios–Berrios v. INS,* 776 F.2d 859 (9th Cir.1985); *Castenada–Delgado v. INS,* 525 F.2d 1295, 1300 (7th Cir.1975); and *Castro-O'Ryan v. Dep't of Immigration & Naturalization,* 821 F.2d 1415, 1419, amended, 847 F.2d 1307 (9th Cir.1987), plaintiffs say they have made out a claim under the due process clause of the Fifth Amendment. We think not. Aliens like others are entitled to due process but the government's overhearing of attorney-client conversations relating to the deportation proceedings does not *in itself* violate the Fifth Amendment any more than the government's overhearing of attorney-client conversations relating to the defense of a criminal prosecution *in itself* violates the Sixth and Fourteenth Amendments. The Supreme Court in *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), held that the constitutional right to counsel in a criminal case is violated only if the intercepted communications are somehow used against the defendant, that is, only if the defendant has been prejudiced in connection with the underlying proceeding. *See United States v. Kelly,* 790 F.2d 130, 136–37 (D.C.Cir.1986). The standard for a *Bivens*-type tort action based on the Sixth Amendment, however, is lower, but in any case requires a deliberate intercepting of attorney-client communications. *See Briggs v. Goodwin,* 698 F.2d 486 (D.C.Cir.), *vacated on other grounds,* 712 F.2d 1444 (D.C.Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984). We express no opinion about whether an action for an injunction requires the "prejudice" showing of *Weatherford,* only the deliberate interception of *Briggs,* or something in between. Since no inference of deliberate overhearing may be drawn from the Lindemann declaration or plaintiffs' allegations relating to it, even the standard for damages cannot be met by plaintiffs here.

■■■■ As we have written, a Rule 12(b)(6) motion tests the legal sufficiency of the complaint. Material factual allegations in the complaint are therefore to be taken as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). District courts are not, however, required to speculate that factual propositions unmentioned, or evidentiary links unrevealed, are among the facts plaintiff intends to prove at trial. *See* 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE ¶ 1357, at 311 (2d ed. 1990). A court must take care not to put words into counsel's mouth by reading into a complaint factual allegations not fairly comprehended within what is actually asserted. By failing to allege that the government deliberately intercepted any attorney-client communications, the Complaint omits an essential element of any Fifth Amendment due process claim and therefore fails to state a cause of action.[17]

The district court's judgment is affirmed except insofar as it dismissed the claim of the alien plaintiffs relating to a violation of the First Amendment with respect to ongoing surveillance. In that limited respect and in accordance with the procedures set forth in this opinion, the case is remanded for further proceedings.

---

**17.** The alien plaintiffs also allege injury to the right to counsel provided by the Immigration and Nationality Act, 8 U.S.C. § 1252(b)(2). Complaint ¶¶ 69–70. Whatever the contours of that right may be, it clearly cannot extend beyond an immigration proceeding. Any remedy would therefore lie in such a proceeding, or in a related § 1806(f) proceeding.

*Affirmed in part and reversed and re-manded in part.*